942 P.2d 359 (1997)
133 Wash.2d 96
John DOE, Respondent,
v.
John G. FINCH and John G. Finch, Ph.D., P.S., Petitioner.
No. 64131-5.
Supreme Court of Washington, En Banc.
Argued January 22, 1997.
Decided August 21, 1997.
Bryan P. Harnetiaux; Harbaugh & Bloom; Debra Stephens, Spokane, Amicus Curiae on behalf of State Trial Lawyers.
Thorsrud, Cane & Paulich, Russell C. Love, Seattle, Amicus Curiae on behalf of Washington Defense Trial Lawyers.
Bullivant, Houser, Bailey, Pendergrass & Hooffman, Robert J. Roche and Monica J. Fernandez, Seattle, for Petitioner.
David A. Summers, Seattle, for Respondent.
DOLLIVER, Justice.
John Doe sued psychologist John G. Finch, Ph.D., P.S., for malpractice and outrage. We find the malpractice action is not barred, as a matter of law, by the statute of limitation, RCW 4.16.350. We find a question of fact remains as to whether the outrage claim is time barred.
For a more detailed discussion of the facts, see Doe v. Finch, 81 Wash.App. 342, 343-48, 914 P.2d 756 (1996). We give here only a brief summary. Dr. Finch was Doe's therapist from February 1974 until February 1980, except for a one-year break between *360 April 1975 and June 1976. Dr. Finch also provided therapy to Doe's wife during the same time period. One of the principal issues of Doe's therapy with Dr. Finch involved Doe's marital problems with his wife. Doe and his wife separated in 1977, but Doe hoped to save the marriage, and those issues continued to be important in his therapy sessions.
There were times in the course of his seeing Dr. Finch that Doe became jealous of Dr. Finch. Doe stated, "It sometimes seemed that my wife had a higher opinion of [Dr. Finch] than she did of me...." Clerk's Papers at 17. Doe discussed his jealousy with Dr. Finch, who allegedly explained that Doe's wife merely saw Dr. Finch as a "`father figure.'" Clerk's Papers at 17. Doe claims Dr. Finch "assured me, more than once, that I had nothing to worry about, and that his relationship with my spouse was strictly professional." Clerk's Papers at 17.
Doe's marriage ended in 1981. Ten years later Doe received a letter from Dr. Finch in which Dr. Finch admitted to engaging in improper sexual relations with one of his female clients (but not Doe's wife). Doe then began to suspect that Dr. Finch may have had a sexual relationship with Doe's wife while Dr. Finch was counseling Doe on his marital problems. In April 1992, Seattle papers printed front page stories describing complaints filed against Dr. Finch by six different patients. The day after the articles were printed, Doe received a call from his ex-wife, who confessed that, in 1976, she started a sexual relationship with Dr. Finch. In a deposition, Dr. Finch admits his romantic involvement with Doe's wife from 1976 until at least 1981.
In the fall of 1992, Doe filed this lawsuit against Dr. Finch alleging malpractice and outrage. Dr. Finch was granted summary judgment dismissing the action. The trial court's written order states Doe failed to file the lawsuit in a timely manner under RCW 4.16.350. Doe appealed from the trial court's decision. The Court of Appeals held the statute of limitation is tolled when a plaintiff can prove intentional concealment, and the court found a question of fact as to whether Dr. Finch intentionally concealed his sexual relationship with Doe's wife. Finch, 81 Wash.App. at 349-50, 914 P.2d 756. The court ruled the tolling provision of RCW 4.16.350 ends when a plaintiff discovers the concealment, after which the plaintiff has three years to bring the action. The court found a question of fact as to when Doe discovered Dr. Finch's concealment of the sexual relationship. Finch, 81 Wash.App. at 350, 914 P.2d 756.
All of the malpractice issues raised by the parties are resolved by our decision in Duke v. Boyd, 133 Wash.2d 80, 942 P.2d 351 (1996), which was argued before us on the same day as this case. Duke holds RCW 4.16.350 is tolled indefinitely once the plaintiff proves the defendant fraudulently or intentionally concealed the underlying cause of action. Given Duke`s reading of RCW 4.16.350, the issue of when Dr. Finch's intentional concealment ended is irrelevant. Nor must we rule on Dr. Finch's attempt to construe Quinn v. Connelly, 63 Wash.App. 733, 821 P.2d 1256 (1992), as holding intentional concealment ends upon the termination of a professional relationship.
A remaining issue in this case is whether Dr. Finch intentionally concealed his sexual relationship with Doe's wife. We agree with the Court of Appeals that Doe's allegations, viewed most favorably to the nonmoving party, sufficiently raise a question of fact to withstand summary judgment. Doe's action for malpractice centers around Dr. Finch's alleged unprofessional and unethical sexual relationship with Doe's wife while Dr. Finch was providing therapy to Doe. Dr. Finch allegedly lied to Doe when questioned about his relationship with Doe's wife. These allegations must be resolved by a jury.
Although the Court of Appeals grouped together Doe's malpractice and outrage claims, as did both parties in their briefs, our disposition of the medical malpractice issue requires a separate analysis of the outrage claim. While the Legislature's special treatment of malpractice actions under RCW 4.16.350 saves Doe's malpractice claim from summary judgment on the timeliness issue, Doe's outrage claim is still governed by the general statutes of limitation.
*361 Outrage is a common law action in this state. This court has "adopted the definition of the tort of outrage from the Restatement (Second) of Torts § 46 (1965)." Rice v. Janovich, 109 Wash.2d 48, 61, 742 P.2d 1230 (1987) (citing Grimsby v. Samson, 85 Wash.2d 52, 530 P.2d 291, 77 A.L.R.3d 436 (1975)). None of the parties have asserted in their briefs which statute of limitation governs the common law outrage claim. There appears to be some disagreement in this state whether outrage claims are governed by the three-year statute of limitation, RCW 4.16.080(2) ("for any other injury to the person or rights of another not hereinafter enumerated"), see St. Michelle v. Robinson, 52 Wash.App. 309, 314, 759 P.2d 467 (1988) (applying the three-year statute to a daughter's claim of outrage and intentional infliction of emotional distress stemming from her being sexually abused by her father), or the two-year statute of limitation, RCW 4.16.100 (actions for libel, slander, assault, assault and battery, or false imprisonment). See Douchette v. Bethel Sch. Dist. 403, 117 Wash.2d 805, 809 & n. 1, 818 P.2d 1362 (1991) (dicta) (outrage claim subject to two-year limitation). Based on the record before us, we decline to decide the issue at this time. On remand, the parties can argue to the trial court which statute of limitation should apply to the outrage claim.
Regardless of which limitation period applies to the outrage claim, the discovery rule most likely applies. In cases where "plaintiffs could not have immediately known of their injuries due to ... concealment of information by the defendant[,]" this court has allowed the common law discovery rule to toll a statute of limitation. In re Estates of Hibbard, 118 Wash.2d 737, 749-50, 826 P.2d 690 (1992). "The discovery rule provides that a cause of action does not accrue until an injured party knows, or in the exercise of due diligence should have discovered, the factual bases of the cause of action." Beard v. King County, 76 Wash.App. 863, 867, 889 P.2d 501 (1995) (citing Estates of Hibbard, 118 Wash.2d at 744, 826 P.2d 690; Allen v. State, 118 Wash.2d 753, 758, 826 P.2d 200 (1992)).
On remand, if Doe pursues the outrage claim as well as the malpractice claim, the finder of fact will have to apply the discovery rule and determine when Doe, through the exercise of due diligence, should have discovered the elements of the outrage action. The trial court will also have to determine if the outrage claim would impermissibly allow double recovery for emotional distress resulting from the tortious conduct. Janovich, 109 Wash.2d at 61-62, 742 P.2d 1230 (plaintiff cannot recover damages on outrage theory when damages for mental or emotional distress were already recoverable under plaintiff's assault claim).
Finally, we have focused our analysis solely on the issue of whether Doe's claims are time barred. Nothing in this decision should be construed as a comment on the merits of Doe's outrage and malpractice claims. We affirm the Court of Appeals and remand the case for further proceedings.
SMITH, GUY, JOHNSON, MADSEN, ALEXANDER and SANDERS, JJ., concur.
ALEXANDER, Justice (concurring).
Although I joined Justice Talmadge's concurrence in Duke v. Boyd, 133 Wash.2d 80, 942 P.2d 351 (1997) because I agree with him that the tolling proviso in RCW 4.16.350(3) does not suspend the statute of limitations set forth in that statute indefinitely, I feel constrained to join the majority here. That is so because the position advanced by Justice Talmadge did not prevail and I feel bound by principles of stare decisis to hold here, consistent with Duke, that the tolling is indefinite. Duke, 133 Wash.2d at 85, 942 P.2d 351.
Furthermore, even if the rule were that tolling ends when a plaintiff acquires actual knowledge of facts giving rise to a cause of action, it is clear that Doe did not acquire such knowledge until April 1992 when his former wife informed him of her relationship with Dr. Finch. Thus, Doe's lawsuit would have been timely even under the rule Justice Talmadge advanced in his concurrence in Duke.
*362 DURHAM, Chief Justice (dissenting).
For reasons stated in my concurring opinion in Duke v. Boyd, 133 Wash.2d 80, 942 P.2d 351 (1997), I believe that the Legislature did not intend the tolling provision of RCW 4.16.350 to suspend the limitation period after a plaintiff discovers the essential facts of a cause of action. I would hold that Respondent John Doe had actual knowledge of the essential facts when he first accused Dr. Finch of having a romantic relationship with Doe's wife in a 1981 letter to Dr. Finch. Consequently, Doe's 1992 action for malpractice and outrage was untimely.[1]
Doe was in therapy with Dr. Finch from 1974 to 1980. Much of Doe's therapy focused on Doe's failing marriage. In 1976, Dr. Finch began a romantic and sexual relationship with Doe's wife that lasted until at least 1981. Doe felt jealousy toward Dr. Finch, and it seemed to Doe that his wife had a higher opinion of Dr. Finch than of Doe. Dr. Finch assured Doe that Dr. Finch's relationship with Doe's wife was strictly professional.
In December 1981, Doe wrote an angry letter to Dr. Finch, blaming Dr. Finch for the failure of Doe's marriage, and making specific allegations of an inappropriate relationship between Dr. Finch and Doe's wife.
THE TRUE REASON WHY THERE COULD BE NO RECONCILIATION ISTHAT YOU ESTABLISHED AND NURTURED A RELATIONSHIP. YOU STOLE HER AFFECTION WHICH YOU HAD NO RIGHT TO DO! WHEN SHE TRANSFERRED WIFELY AFFECTION TO YOUYOU LET IT HAPPEN....
4. REMEMBER THE INDIAN FREIGHTER PARTY IN THE PORT OF TACOMA? I DOWITH GREAT PAINHOW COULD I HAVE BEEN SO DUMB?
...
THE CREW OF THE SHIP COULD NOT BE CONVINCED THAT SHE WAS MY WIFE. THEY KNEW SHE WAS YOUR WIFE. ME IN MY INNOCENCETHEY IN THEIR WISDOM.
WRONG, JOHNTOTALLY, COMPLETELY WRONG. YOU FOSTERED THE RELATIONSHIPYOU ENCOURAGED IT. YOU HAVE WRONGED OUR WHOLE FAMILY!!
Clerk's Papers at 66-68. Following this letter, Doe took no legal action against Dr. Finch for more than a decade. Doe finally brought the present action against Dr. Finch after he learned that another of Dr. Finch's former clients had settled a lawsuit against Dr. Finch based on Dr. Finch's sexual involvement with the client during therapy.
Doe contends he was unaware of the sexual nature of the relationship between Dr. Finch and Doe's wife.[2] This argument is based on the erroneous assumption that the sexual relationship between Dr. Finch and Doe's wife is an essential element of his causes of action. This is an action for psychiatric malpractice and outrage, not adultery. A sexual relationship between Dr. Finch and Doe's former wife may make matters worse, but it is not an essential element of Doe's causes of action. As Doe's own expert, Dr. Wheeler, has explained, any degree of romantic relationship between a therapist and a client's wife is inappropriate and constitutes psychiatric malpractice.
Assuming that the tolling effect of intentional concealment ends only when a plaintiff has actual knowledge of the essential facts of a cause of action, the 1981 letter establishes Doe's actual knowledge of the essential facts.[3] The letter describes a romantic relationship *363 between Dr. Finch and Doe's wife. The letter indicates that Dr. Finch had failed to conceal the relationship, and that the relationship was readily apparent to Doe and third parties. The letter also shows that Doe knew that Dr. Finch's conduct was unprofessional, and that the relationship was emotionally injurious to Doe, and damaging to Doe's relationship with his wife.
Doe dismisses the allegations in his 1981 letter as mere expressions of jealousy and bitterness. Doe relies on the affidavit of Dr. Wheeler to establish that he did not have actual knowledge of Dr. Finch's misconduct when Doe sent the 1981 letter. In his affidavit, Dr. Wheeler discusses the causes of Doe's feelings of blame and anger, but offers no alternative explanation for Doe's specific allegations of an inappropriate romantic relationship between Dr. Finch and Doe's wife. Consequently, the affidavit fails to rebut the inference that Doe had actual knowledge of that relationship. Dr. Wheeler's professional opinion regarding Doe's psychological condition in 1981 may explain why Doe delayed taking legal action against Dr. Wheeler. But such considerations are irrelevant to the issue of whether Doe had actual knowledge of the essential facts. A plaintiff's psychological reasons for failing to take timely legal action will not toll a statute of limitation. See Allen v. State, 118 Wash.2d 753, 759, 826 P.2d 200 (1992).
Doe also suggests that he had no evidence upon which to bring a cause of action until Dr. Finch's misconduct involving other clients came to light in 1991. On the contrary, the 1981 letter indicates that Doe had personally observed the romantic relationship between Dr. Finch and Doe's wife. Even if he had not, Doe's specific allegations in the 1981 letter establish his actual knowledge of essential facts for purposes of commencement of the limitation period.
A smoking gun is not necessary to commence the limitation period. An injured claimant who reasonably suspects that a specific wrongful act has occurred is on notice that legal action must be taken. At that point, the potential harm with which the discovery rule is concernedthat remedies may expire before the claimant is aware of the cause of actionhas evaporated.
Beard v. King County, 76 Wash.App. 863, 868, 889 P.2d 501 (1995).
The same rationale should apply to cases involving intentional concealment. A plaintiff who specifically alleges facts that a tortfeasor has previously attempted to conceal necessarily has actual knowledge of those facts. The tortfeasor's earlier efforts to conceal the true facts no longer prevent the plaintiff from investigating the facts and taking any legal action that is necessary. Whether or not Doe could prove Dr. Finch's unprofessional conduct at the time Doe wrote the 1981 letter, the letter nevertheless establishes that Dr. Finch's intentional concealment of the relationship was no longer effective.
I would reverse the Court of Appeals and uphold the trial court's dismissal of this action.
TALMADGE, J., concurs.
NOTES
[1] Neither the trial court nor the Court of Appeals considered whether Doe's factual allegations state a cause of action. Doe v. Finch, 81 Wash. App. 342, 348 n. 13, 914 P.2d 756 (1996). This review is based on the assumption that these facts state a cause of action. The parties have not asked the court to test that assumption.
[2] In finding an issue of fact as to when Doe discovered Dr. Finch's misconduct, the Court of Appeals relied on the fact that Doe did not observe sexual conduct between Dr. Finch and Doe's wife. Doe v. Finch, 81 Wash.App. 342, 351-52, 914 P.2d 756 (1996).
[3] Unlike Duke v. Boyd, 133 Wash.2d 80, 942 P.2d 351 (1997), this case does not present the question of whether constructive knowledge is sufficient to end the tolling period.