[No. 27525-6-III.   Division Three.   November 17, 2009.]

KELLY COX, *Appellant*, v. OASIS PHYSICAL THERAPY, PLLC, ET AL., *Respondents*.

*Thaddeus P. Martin, IV, Kerri W. Feeney* (of *Feeney Law Office PLLC*), and *Mario M. Ledesma* (of *Ledesma Law Offices PLLC*), for appellant.

*Ketia B. Wick* and *Timothy D. Shea* (of *Lee Smart PS*) and *Rebecca S. Ringer* and *David J. Corey* (of *Floyd Pflueger & Ringer PS*), for respondents.

¶1 BROWN, J. — Kelly Cox appeals the summary dismissal as time barred of all her claims against Oasis Physical Therapy, Mindi Irvine, and Rafat Shirinzadeh, allegedly arising from her employment with Oasis. We affirm the summary dismissal of Ms. Cox's claims for medical negligence, assault and battery, and wrongful discharge and unlawful retaliation under the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, because they are time barred. We reverse as not time barred the summary dismissal of her claims for negligent hiring, retention, and supervision; negligent infliction of emotional

distress; outrage and intentional infliction of emotional distress; and, sex, gender, and hostile environment discrimination under the WLAD. Accordingly, we affirm in part, reverse in part, and remand to the trial court.

## FACTS

¶2 Ms. Irvine and Mr. Shirinzadeh, physical therapists, co-owned Oasis. On December 6, 2007, Ms. Cox sued Oasis, Ms. Irvine, and Mr. Shirinzadeh[1] for sex discrimination, gender discrimination, hostile environment, disparate treatment, and disparate impact under WLAD; negligence, negligent hiring, retention, and supervision; and intentional or negligent infliction of emotional distress, outrage, and assault and battery. Ms. Cox alleged, "During her employment, [she] was pervasively sexually harassed and assaulted by Mr. Shirinzadeh and then threatened and intimidated by [Oasis] when she spoke out about it." Clerk's Papers (CP) at 531. On December 14, 2007, Ms. Cox amended her complaint to allege medical negligence against Mr. Shirinzadeh and Oasis; sex, gender, and hostile environment discrimination under the WLAD; negligence, negligent hiring, retention, and supervision; and intentional or negligent infliction of emotional distress, outrage, and assault and battery.

¶3 On August 25, 2008, Oasis and Ms. Irvine moved for partial summary judgment on the medical negligence claim against Oasis, alleging the claim is time barred. On August 28, 2008, Mr. Shirinzadeh filed a motion joining Oasis and Ms. Irvine's motion for partial summary judgment and moving for summary judgment on Ms. Cox's "entire claim and Complaint against him." CP at 431. Mr. Shirinzadeh alleged, "All of the causes of action alleged by [Ms.] Cox are barred by the applicable statutes of limitations." CP at 431. Later, Oasis and Ms. Irvine joined Mr. Shirinzadeh's summary judgment motion on the claims of negligent hiring,

---

[1] Ms. Cox also listed Ms. Irvine and Mr. Shirinzadeh's spouses as defendants.

retention, and supervision, and negligent infliction of emotional distress, and her claims for intentional infliction of emotional distress, outrage, and assault and battery.

¶4 On September 18, 2008, the trial court permitted Ms. Cox to file a second amended complaint, alleging medical negligence against Mr. Shirinzadeh and Oasis; sex, gender, and hostile environment discrimination under the WLAD; negligence, negligent hiring, retention, and supervision; intentional or negligent infliction of emotional distress, outrage, and assault and battery; wrongful discharge under the WLAD; and unlawful retaliation.

¶5 Also on September 18, 2008, Ms. Cox responded to the summary judgment motions. Ms. Cox asserted her WLAD claims of sex, gender, and hostile environment discrimination; wrongful discharge; and unlawful retaliation were not subject to the summary judgment motions, "in that it was neither addressed or brief [sic] by any defendant." CP at 232. Nevertheless, Ms. Cox addressed the timeliness of her WLAD claims.

¶6 On September 22, 2008, Mr. Shirinzadeh filed supplemental briefing clarifying he was requesting summary dismissal as time-barred of all claims, including those made in Ms. Cox's second amended complaint. Later he filed briefing addressing the WLAD limitations issues. Oasis and Ms. Irvine again joined.

¶7 Ms. Cox declared she began working at Oasis in February 2004, eventually becoming Mr. Shirinzadeh's assistant. She stated that she became a patient at Oasis in April 2004 and first saw Mr. Shirinzadeh on May 6, 2004, for neck treatment. Ms. Cox described a treatment incident occurring on her third visit with Mr. Shirinzadeh that lasted close to an hour where he had her remove her bra before he pushed her gown up to her chin and began moving his hands "all over the place." CP at 26. Ms. Cox declared she complained about this incident to Ms. Irvine, who told her she would talk to Mr. Shirinzadeh. Later, Ms. Irvine told Ms. Cox and others to "stop complaining" and threatened firing if the "gossip" continued. CP at 28. In addition,

Ms. Cox stated, "I also complained to [Ms.] Irvine more times than I could count, from the time I started in February 2004 until May 2005 about Mr. Shirinzadeh's sexual harassment." CP at 31.

¶8 Ms. Cox stated she no longer saw Mr. Shirinzadeh as a patient after the treatment incident but noticed then:

> [H]e became very touchy and consistently started giving me very uncomfortable sexual hugs that lasted longer than necessary, he would contently [sic] place his hands on my shoulders and on my back. He would walk up behind me and rub my shoulders or my back. [Mr. Shirinzadeh] would also say, "I am the only cock in the hen house" around patients and staff on a *daily basis*, until the point I was terminated. He would also make sexual comments about female patients and their looks on a *daily basis*, he would say things like, "she's pretty", "that lady is beautiful", "she is hot" and many other sexual comments. These comments were also directed to many of the female staff member [sic] on a *daily basis*.

CP at 27.

¶9 Ms. Cox declared she was required to reassure other female patients that exposing their breasts was "normal procedure" and

> Mr. Shirinzadeh and [Ms.] Irvine drilled [that] into me over and over, even to the point of Mr. Shirinzadeh showing medical treatise that appeared to support Mr. Shirinzadeh's treatment method of touching nude women as medically necessary.

CP at 28. Ms. Cox related:

> Mr. Shirinzadeh got ruder by the day. I would go home crying because of the way he was treating me, I also suffered headaches, insomnia, stomach aches, loss of appetite and anxiety as a result of how both Mr. Shirinzadeh and Ms. Irvine treated me at Oasis.

CP at 28.

¶10 Ms. Cox declared she wrote Mr. Shirinzadeh and Ms. Irvine in April 2005 addressing problems she had with Oasis and with Mr. Shirinzadeh, and

[t]wo weeks after I gave them my letter I still did not hear anything. Around this time period, I went to work . . . and was confronted by a lady named Tammy, who told me she was my replacement. Neither [Ms.] Irvine or Mr. Shirinzadeh told me that I would be getting replaced or that I had to train her for two weeks . . . . After those two weeks . . . my hours were cut . . . . I couldn't afford to live on that lower pay and I couldn't afford not to work. I brought that to there [sic] attention and they agreed at the time to pay me my regular pay for a couple months so I could afford to live until I left for school at the end of August, 2005.

CP at 30-31. Ms. Cox stated, "In May 2005, when they gave me the severance package they told me that they were giving me this so I would not tell the EEOC [Equal Employment Opportunity Commission] about their business and what had been happening." CP at 31.

¶11 The Department of Health (DOH), Board of Physical Therapy, investigated both Ms. Irvine and Mr. Shirinzadeh. On March 29, 2007, Ms. Cox submitted a declaration as part of the DOH investigation of Ms. Irvine. Regarding Mr. Shirinzadeh's treatment of other female patients, Ms. Cox related Mr. Shirinzadeh claimed his techniques were followed elsewhere in the world and he showed her manuals depicting women being treated when not wearing clothing. Ms. Cox stressed she did not receive treatment from Mr. Shirinzadeh during her third session, rather "[w]hat he did was massage my breasts for about 45 minutes." CP at 178. Ms. Cox related Ms. Irvine explained that Mr. Shirinzadeh had convinced her "everything he did was both proper and medically necessary." CP at 180. Ms. Cox described a specific incident where three female Oasis employees, including herself, were standing near the front desk "when Mr. Shirinzadeh suddenly picked me up and threw me over his shoulder." CP at 181.

¶12 Neither Mr. Shirinzadeh nor Ms. Irvine submitted declarations or deposition testimony in support of their summary judgment motions.

¶13 At the summary judgment hearing, the movants argued they were seeking summary judgment on all of Ms.

Cox's claims. Ms. Cox objected, arguing solely the medical negligence claim was before the court. After hearing argument from all parties and considering all the listed briefing materials, the trial court granted Oasis and Ms. Irvine's and Mr. Shirinzadeh's motions for summary judgment, finding all of the claims time barred. Ms. Cox appealed.

## ISSUE AND STANDARD OF REVIEW

¶14 The issue is whether the trial court erred in granting summary judgment in favor of Oasis and Ms. Irvine and Mr. Shirinzadeh. We review a trial court's summary judgment grant de novo, engaging in the same inquiry as the trial court. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). "A motion for summary judgment based on a statute of limitations should be granted only if the record demonstrates that there is no genuine issue of material fact as to when the statutory period commenced." *Zaleck v. Everett Clinic*, 60 Wn. App. 107, 110, 802 P.2d 826 (1991) (citing *Olson v. Siverling*, 52 Wn. App. 221, 224, 758 P.2d 991 (1988)). When considering a summary judgment motion, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Lybbert*, 141 Wn.2d at 34. Further, "[q]uestions of fact may be determined on summary judgment as a matter of law where reasonable minds could reach but one conclusion." *Swinehart v. City of Spokane*, 145 Wn. App. 836, 844, 187 P.3d 345 (2008) (citing *Alexander v. County of Walla Walla*, 84 Wn. App. 687, 692, 929 P.2d 1182 (1997)).

## A. Medical Negligence

¶15 Ms. Cox contends her medical negligence claim was timely filed. Actions for medical negligence must be commenced within a standard three-year limitation period or under an alternative one-year discovery rule:

> Any civil action for damages for injury occurring as a result of health care . . .

. . . .

based upon alleged professional negligence shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later.

RCW 4.16.350. In addition, the statute of limitations for medical negligence is tolled by proof of intentional concealment:

[T]he time for commencement of an action is tolled upon proof of . . . intentional concealment . . . until the date the patient or the patient's representative has actual knowledge of the . . . concealment, . . . the patient or the patient's representative has one year from the date of the actual knowledge in which to commence a civil action for damages.

*Id.*

¶16 Ms. Cox argues Mr. Shirinzadeh committed medical negligence during her third visit. According to Ms. Cox, this visit took place no later than the beginning of June 2004. Ms. Cox filed her medical negligence claim on December 14, 2007. Therefore, Ms. Cox did not file her cause of action within three years of the June 2004 visit. Thus, we must ask if Ms. Cox filed her medical negligence claim within the one-year discovery rule or if the statute of limitations is tolled by intentional concealment.

¶17 The statute of limitations for medical negligence is tolled by proof of intentional concealment. *Id.* This provision "requires more than just the alleged negligent act or omission forming the basis for the cause of action." *Gunnier v. Yakima Heart Ctr., Inc.*, 134 Wn.2d 854, 867, 953 P.2d 1162 (1998). Rather, the provision "is aimed at conduct or omissions intended to prevent the discovery of negligence or of the cause of action." *Id.* Ms. Cox argues her case is like *Duke v. Boyd* and *John Doe v. Finch. See Duke v. Boyd*, 133 Wn.2d 80, 942 P.2d 351 (1997); *John Doe v. Finch*, 133 Wn.2d 96, 942 P.2d 359 (1997).

¶18 In *Duke*, the defendant performed eye surgery on the plaintiff, with unsatisfactory results. *Duke*, 133 Wn.2d at 82. When the plaintiff questioned the defendant regarding why the results were not as promised, "[the defendant] allegedly responded that [the plaintiff] was the only patient who did not react positively to the procedure, and he implied or stated that her case was simply an unexplainable or unique phenomenon." *Id.* Over nine years later, the plaintiff discovered that other patients of the defendant had unsatisfactory results. *Id.* at 83. Later, the plaintiff sued the defendant for medical malpractice, but the trial court summarily dismissed the claim as time barred. *Id.* Our Supreme Court reversed, finding a genuine issue of material fact existed as to whether the defendant fraudulently or intentionally concealed the plaintiff's cause of action, which was a question for the trier of fact. *Id.* at 83, 88.

¶19 In *Finch*, the defendant provided therapy to both the plaintiff and the plaintiff's wife. *Finch*, 133 Wn.2d at 98. The plaintiff became jealous of the defendant and conveyed his concerns to the defendant. *Id.* at 99. The plaintiff claimed the defendant " 'assured me, more than once, that I had nothing to worry about, and that his relationship with my spouse was strictly professional.' " *Id.* Over 12 years later, after the plaintiff ended therapy with the defendant, he discovered his wife had had a sexual relationship with the defendant. *Id.* The *Finch* trial court summarily dismissed his malpractice claim as time barred. *Id.* Our Supreme Court reversed, finding that "[the plaintiff's] allegations, viewed most favorably to the nonmoving party, sufficiently raise a question of fact to withstand summary judgment." *Id.* at 100.

¶20 Here, Ms. Cox argues Mr. Shirinzadeh intentionally concealed his negligence by telling her his treatment style was different and showing her manuals depicting treatment of nude patients. But, unlike *Duke* and *Finch*, Ms. Cox received this information when she later complained about his treatment of other patients, not herself. Thus, she does not raise facts bearing on her treatment

before June 2004. *See Duke*, 133 Wn.2d at 82; *Finch*, 133 Wn.2d at 99; *see also, e.g., Gunnier*, 134 Wn.2d at 867-68 (finding that the plaintiff failed to allege any facts implicating the intentional concealment provision). Although intentional concealment is generally a question of fact for the trier of fact, Ms. Cox must allege facts to support the claim. *See Breuer v. Presta*, 148 Wn. App. 470, 478, 200 P.3d 724 (2009). Accordingly, no genuine material fact issues remain on intentional concealment of Ms. Cox's medical negligence claim.

¶21 Regarding Ms. Irvine's alleged intentional concealment of Mr. Shirinzadeh's negligence, Ms. Cox points to Ms. Irvine's failure to report Mr. Shirinzadeh's conduct because she believed it was medically necessary. Ms. Cox does not cite any law to support her argument that the conduct of a person other than the practitioner is relevant to the issue of whether intentional concealment tolls the statute of limitations for an action against the practitioner. Ms. Irvine's conduct does not show Mr. Shirinzadeh failed to disclose facts or information to Ms. Cox before or during June 2004. *See Duke*, 133 Wn.2d at 82; *Finch*, 133 Wn.2d at 99.

¶22 Next, a medical negligence claim must be brought within "one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by [the alleged] act or omission." RCW 4.16.350(3). The one-year postdiscovery period "commences when the plaintiff 'discovered or reasonably should have discovered all of the essential elements of [his or] her possible cause of action, *i.e.,* duty, breach, causation, damages.' " *Zaleck*, 60 Wn. App. at 110-11 (alteration in original) (quoting *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 511, 598 P.2d 1358 (1979)).

¶23 However, "[t]he discovery rule merely tolls the running of the statute of limitations until the plaintiff has knowledge of the 'facts' which give rise to the cause of action; it does not require knowledge of the existence of a legal cause of action itself." *Richardson v. Denend*, 59 Wn.

App. 92, 95-96, 795 P.2d 1192 (1990). "The key consideration under the discovery rule is the factual, as opposed to the legal, basis of the cause of action." *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 35, 864 P.2d 921 (1993).

¶24 Ms. Cox points to the DOH investigation as the time she discovered her treatment was not medically necessary, but the discovery rule focuses on discovering facts, not knowledge of the legal cause of action. *See Richardson*, 59 Wn. App. at 95-96; *Adcox*, 123 Wn.2d at 35. Our record shows that by June 2004, Ms. Cox was fully aware of Mr. Shirinzadeh's acts that provoked her negative responses. Ms. Cox complained to Ms. Irvine about the incident and stopped seeing Mr. Shirinzadeh as a patient. Reasonable persons could reach but one conclusion, that Ms. Cox knew the critical facts underlying her cause of action. Therefore, Ms. Cox's medical negligence claim was not timely filed under the discovery rule.

## B. Other Negligence Claims

¶25 Ms. Cox contends her negligent hiring, retention, and supervision, and negligent infliction of emotional distress claims were timely filed.

¶26 The three-year statute of limitations for personal injury actions governs Ms. Cox's negligence claims. RCW 4.16.080(2). Barring application of the discovery rule, a cause of action for negligent injury accrues at the time the act or omission occurs. *In re Estates of Hibbard*, 118 Wn.2d 737, 744-45, 826 P.2d 690 (1992).

¶27 Ms. Cox filed her negligent hiring, retention, and supervision, and negligent infliction of emotional distress claims on December 6, 2007. Therefore, to be timely under the three-year statute of limitations, Ms. Cox's claims must have occurred between December 6, 2004 and December 6, 2007. Ms. Cox argues the discovery rule applies to her claims because she could not have reasonably discovered that Ms. Irvine had negligently retained and supervised

Mr. Shirinzadeh until she took part in the March 2007 DOH investigation, and because Ms. Irvine and Mr. Shirinzadeh concealed the fact that Mr. Shirinzadeh's conduct was not medically necessary.

¶28 As noted above, "[t]he discovery rule operates to toll the date of accrual until the plaintiff knows or, through the exercise of due diligence, should have known all the facts necessary to establish a legal claim." *Crisman v. Crisman*, 85 Wn. App. 15, 20, 931 P.2d 163 (1997) (citing *Allen v. State*, 118 Wn.2d 753, 758, 826 P.2d 200 (1992)). Again, the question is if the plaintiff knew the relevant facts, not when the plaintiff knew the facts sufficiently established a legal cause of action. *Allen*, 118 Wn.2d at 758.

¶29 Ms. Cox's negligence claims stem from Mr. Shirinzadeh's alleged conduct during her employment with Oasis through May 2005. Viewed most favorably for Ms. Cox, she complained to Ms. Irvine about Mr. Shirinzadeh's behavior daily beginning in June 2004 to her May 2005 termination from Oasis. Ms. Cox declared, "I would go home crying because of the way [Mr. Shirinzadeh] was treating me, I also suffered headaches, insomnia, stomach aches, loss of appetite and anxiety as a result of how both Mr. Shirinzadeh and Ms. Irvine treated me at Oasis." CP at 28. Given these alleged facts, the discovery rule does not operate to toll the statute of limitations for Ms. Cox's negligence claims because some factual incidents are alleged to have taken place within three years of filing her suit. Like the June 2004 visit to Mr. Shirinzadeh, Ms. Cox was fully aware of Mr. Shirinzadeh's behavior and its effects on her at the time it was occurring.

¶30 Previously, the continuing violation doctrine constituted an equitable exception to the statute of limitations in discrimination cases. *See Milligan v. Thompson*, 90 Wn. App. 586, 595, 953 P.2d 112 (1998). But our Supreme Court rejected the continuing violation doctrine and instead adopted the analysis set forth in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). *See Antonius v. King County*, 153 Wn.2d

256, 261-69, 103 P.3d 729 (2004). Ms. Cox has not shown the continuing violation doctrine applies to negligence claims, as opposed to discrimination claims. We decline to extend this doctrine beyond discrimination claims.

¶31 In sum, because Ms. Cox alleges that Ms. Irvine negligently retained and supervised Mr. Shirinzadeh throughout her employment with Oasis through May 2005, the trial court erred in finding her claims entirely time barred. Those claims that occurred between December 6, 2004 and December 6, 2007, within three years of the date Ms. Cox filed her claims, were timely filed. We express no opinion regarding the admissibility of evidence of acts occurring outside the limitations period to establish Ms. Cox's negligence claims, or other claims allowed below, leaving those issues for the trial court's resolution.

## C. Intentional Torts

¶32 Ms. Cox contends her intentional infliction of emotional distress, outrage, and assault and battery claims were timely filed.

¶33 " 'Outrage' and 'intentional infliction of emotional distress' are synonyms for the same tort." *Kloepfel v. Bokor*, 149 Wn.2d 192, 193 n.1, 66 P.3d 630 (2003). The claim is subject to a three-year statute of limitations. RCW 4.16.080(2); *Milligan*, 90 Wn. App. at 592. Ms. Cox filed her outrage and intentional infliction of emotional distress claim on December 6, 2007. Thus, to be timely under the three-year statute of limitations, Ms. Cox's claim must have occurred between December 6, 2004 and December 6, 2007.

¶34 Ms. Cox argues the discovery rule applies because she had no way of knowing that her distress had been caused by Mr. Shirinzadeh's conduct until she learned, by taking part in the DOH investigation in March 2007, that his conduct fell below the standard of care. As noted, the discovery rule focus is if the plaintiff knew the relevant facts, not when the plaintiff knew that those facts were

sufficient to establish a legal cause of action. *Allen*, 118 Wn.2d at 758. Ms. Cox's claim stems from Mr. Shirinzadeh's alleged conduct during her employment with Oasis through May 2005. The record shows Ms. Cox was fully aware of the facts regarding Mr. Shirinzadeh's behavior at the time it was occurring. Ms. Cox complained to Ms. Irvine about Mr. Shirinzadeh's behavior. Therefore, the discovery rule does not toll the statute of limitations for Ms. Cox's outrage and intentional infliction of emotional distress claim.

¶35 The statute of limitations for assault and battery is two years. RCW 4.16.100(1). Here, Ms. Cox filed her assault and battery claims on December 6, 2007. Therefore, to be timely under the two-year statute of limitations, Ms. Cox's claim must have occurred between December 6, 2005 and December 6, 2007. However, according to Ms. Cox, her employment with Oasis ended in May 2005. Therefore, her claim could not have occurred between these dates.

¶36 Nonetheless, Ms. Cox argues the discovery rule applies because she was not aware of her claims until she participated in the DOH investigation in March 2007. Her assault and battery claims stem from Mr. Shirinzadeh's alleged conduct during her employment with Oasis through May 2005. The record shows Ms. Cox was fully aware of Mr. Shirinzadeh's behavior at the time it was occurring, as she immediately complained about it to Ms. Irvine. *See Allen*, 118 Wn.2d at 758. Therefore, the discovery rule does not operate to toll the statute of limitations for Ms. Cox's assault and battery claims.

¶37 In sum, because Ms. Cox alleges conduct by Mr. Shirinzadeh throughout her employment with Oasis through May 2005, the trial court erred in finding her outrage and intentional infliction of emotional distress claim entirely time barred. Allegations of factual incidents that occurred between December 6, 2004 and December 6, 2007 are within three years of the date Ms. Cox filed her claims, and thus, timely. However, the trial court did not err in finding Ms. Cox's assault and battery claims were time

barred, as she filed the claims more than two years after her employment with Oasis ended.

## D. WLAD Claims

¶38 Ms. Cox contends the trial court erred in granting summary judgment on her claims under the WLAD, for sex, gender, and hostile environment discrimination, and wrongful discharge and unlawful retaliation. Ms. Cox mainly argues the trial court erred in dismissing her WLAD claims because they were not raised in Oasis' and Ms. Irvine's and Mr. Shirinzadeh's initial motions for summary judgment.

¶39 "It is the responsibility of the moving party to raise in its summary judgment motion all of the issues on which it believes it is entitled to summary judgment." *White v. Kent Med. Ctr. Inc.*, 61 Wn. App. 163, 168, 810 P.2d 4 (1991). Further, "[a]llowing the moving party to raise new issues in its rebuttal materials is improper because the nonmoving party has no opportunity to respond." *Id.*

¶40 On August 28, 2008, Mr. Shirinzadeh joined Oasis and Ms. Irvine's motion for partial summary judgment and sought summary dismissal of Ms. Cox's "entire claim and Complaint against him." CP at 431. Mr. Shirinzadeh alleged "[a]ll of the causes of action alleged by [Ms.] Cox are barred by the applicable statutes of limitations." CP at 431. The claims at that time included sex, gender, and hostile environment discrimination under the WLAD. When Ms. Cox's second amended complaint was allowed on September 18, 2008, adding new WLAD claims, Mr. Shirinzadeh filed a supplemental brief specifying that he was requesting summary judgment on all claims, including the claims of wrongful discharge and unlawful retaliation. Given all, the trial court properly ruled on Ms. Cox's WLAD claims.

¶41 Next, Ms. Cox argues the trial court erred in dismissing her WLAD claims because they were timely filed under the continuing violation doctrine. Oasis and Ms.

Irvine and Mr. Shirinzadeh respond that Ms. Cox did not assign error to the trial court's ruling that the continuing violation doctrine does not apply to her WLAD claims. But Ms. Cox did assign error to that ruling, stating, "The lower court erred in granting defendants' motion for summary judgment dismissing plaintiff's discrimination claims under RCW 49.60 *et seq.*" Appellant's Br. at 3. Oasis and Ms. Irvine and Mr. Shirinzadeh did not have to search the entire record to understand the legal issue. *See Dep't of Soc. & Health Servs. v. Latta*, 92 Wn.2d 812, 817-18, 601 P.2d 520 (1979) (court would consider issue on appeal where the appellant assigned error to the entire trial court order).

██ ██ ¶42 "Discrimination claims must be brought within three years under the general three-year statute of limitations for personal injury actions." *Antonius*, 153 Wn.2d at 261-62 (citing RCW 4.16.080(2)). Previously, as noted above, the continuing violation doctrine constituted an equitable exception to the statute of limitations in discrimination cases. *See Milligan*, 90 Wn. App. at 595. However, our Supreme Court rejected the continuing violation doctrine and instead adopted the analysis set forth in *Morgan*, 536 U.S. 101. *See Antonius*, 153 Wn.2d at 261-69.

¶43 Adopting the *Morgan* analysis, the *Antonius* court concluded that where a discrete act of discrimination is alleged, the limitations period runs from the act. *Antonius*, 153 Wn.2d at 264. But for a hostile work environment claim, the objectionable practice does not occur on a particular day. *Id.* Thus, conduct throughout the time the acts occurred could be considered if the plaintiff presented evidence that one or more acts took place within three years of when the claim was filed. *Id.* Accordingly, "[u]nder *Morgan*, a 'court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period.'" *Id.* at 271 (quoting *Morgan*, 536 U.S. at 120). "The acts must have some relationship to each other to constitute part of the same hostile work environment claim." *Id.* If no relationship

exists "or if 'for some other reason, such as certain inter-vening action by the employer' the act is 'no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts' as part of one hostile work environment claim." *Id.* (quoting *Morgan*, 536 U.S. at 118).

¶44 Ms. Cox alleges she was subjected to sexual harass-ment and discrimination by Mr. Shirinzadeh throughout her employment with Oasis. To be timely under the rule adopted in *Antonius*, these acts must be part of the " 'same actionable hostile work environment practice' " and if they are, then in order for all of the acts to be timely, one must " 'fall[ ] within the statutory time period.' " *Id.* (quoting *Morgan*, 536 U.S. at 120).

¶45 Ms. Cox filed her sex, gender, and hostile environ-ment discrimination claims on December 6, 2007. Thus, to fall within the three-year statutory time period, one of the acts must have occurred between December 6, 2004 and December 6, 2007. A genuine issue of material fact remains if any of Mr. Shirinzadeh's alleged acts fall within the statutory time period under the analysis adopted in *Antonius*. Thus, the trial court erred in granting summary judgment of Ms. Cox's sex, gender, and hostile environment discrimination claims on the basis that the statute of limitations had expired.

¶46 On September 18, 2008, Ms. Cox alleged claims for wrongful discharge and unlawful retaliation under the WLAD. The three-year statutory time period ran from September 18, 2005 to September 18, 2008. According to Ms. Cox, her employment with Oasis ended in May 2005. Ms. Cox presents no evidence of a discriminatory act occurring after May 2005. Accordingly, the trial court did not err in concluding Ms. Cox's wrongful discharge and unlawful retaliation claims were time barred.

¶47 For the first time in her reply brief, Ms. Cox argues her claims of wrongful discharge and unlawful retaliation were timely filed because they relate back to her original complaint. However, this court does not consider

arguments raised for the first time in a reply brief. *Lewis v. City of Mercer Island*, 63 Wn. App. 29, 31, 817 P.2d 408 (1991).

¶48  Affirmed in part, reversed in part, and remanded to the trial court.

Sweeney and Korsmo, JJ., concur.