**FILED**
**April 19, 2016**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| HELENE M. RAUN, | ) | |
| | ) | No. 32366-8-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN H. CAUDILL and LUCILLE J. | ) | |
| CAUDILL, as Trustees for the CAUDILL | ) | UNPUBLISHED OPINION |
| LIVING TRUST dated November 1, | ) | |
| 2000; WANELL J. BARTON, as Trustee | ) | |
| for the WANELL J. BARTON FAMILY | ) | |
| TRUST dated May 7, 1998 and any | ) | |
| amendments; DIRK A. CAUDILL and | ) | |
| LAUREN C. CAUDILL, as Trustees of | ) | |
| the CAUDILL FAMILY TRUST DATED | ) | |
| September 11, 2002; EARL L. | ) | |
| BOETTCHER and MARY C. | ) | |
| BOETTCHER, as Trustees for the | ) | |
| BOETTCHER FAMILY TRUST dated | ) | |
| May 12, 1992; BELVA M. WILLIAMS, a | ) | |
| single woman; LARRY LOUTHERBACK | ) | |
| and SHANNA LOUTHERBACK, as | ) | |
| Trustees of the LOUTHERBACK | ) | |
| LIVING TRUST dated February 9, 2001; | ) | |
| DALE WALKER and CAROL | ) | |
| WALKER, husband and wife; and JOHN | ) | |
| P. GLEESING, as Successor Trustee | ) | |
| under the Caudill Deed of Trust, JOHN | ) | |
| AND JANE DOES 1 THROUGH 10; | ) | |
| JOHN DOE CORPORATIONS 1 | ) | |
| THROUGH 10 AND OTHER JOHN | ) | |
| DOE ENTITIES 1 THROUGH 10, | ) | |
| | ) | |
| Respondents. | ) | |

KORSMO, J. — Helene Raun appeals from the dismissal at summary judgment of

her causes of action against the investors who purchased the property she had been living

on and the court's imposition of CR 11 sanctions for including a trustee among the defendants. We affirm.

## FACTS

In 2000, Ms. Raun and her husband signed a resident agreement with Clare House Bungalows under which they obtained a lifetime, nonassignable occupancy right to a bungalow and were guaranteed a return of at least 80 percent of the purchase price when they vacated the home.[1] Their home was one of 28 single-family residences attached in a six building retirement community. Unlike most of the bungalow purchasers, the Rauns recorded their agreement with Spokane County. In 2004 and 2005, Clare House obtained a loan from John Caudill's investment group (Caudill Group) that was secured by the bungalow homes property. John Gleesing acted as a closing attorney for the Caudill Group.

Clare House defaulted on that loan in early 2008. The Caudill Group initiated a nonjudicial foreclosure and instructed Mr. Gleesing to act as the trustee on the sale. He initiated nonjudicial foreclosure proceedings and sent out a notice of trustee's sale to all interested parties in May 2008. Clare House obtained an injunction that restrained the

---

[1] It appears that this was marketed as a purchase by the occupant with a right of repurchase by Clare House. However, it effectively amounted to prepayment of a lifetime of rent plus an unsecured, zero interest loan in excess of $100,000.

2

sale until March 2009. While this injunction was in place, the residents jointly filed a complaint to quiet title.[2]

After the injunction was lifted in March, Mr. Gleesing filed and served a new notice of trustee's sale in July. This notice contained additional language notifying occupants and tenants with interests junior to the deed of trust that the purchaser at auction would have the right to evict them. However, prior to the sale, Clare House filed for bankruptcy in August 2009 resulting in an automatic stay on the foreclosure. Soon thereafter Mr. Raun died. The residents' action was removed to the bankruptcy court.

By April 2010, the bankruptcy court had lifted the stay on foreclosure and Mr. Gleesing sent out another notice of trustee's sale. On May 27th, Ms. Raun contacted Harry Green, one of the principals of Clare House, and asserted her desire to exercise her contractual right to vacate and receive the repayment. In reference to the most recent notice of trustee's sale, she stated that the threat of vacating her home was the final blow in what had been two years of stressful litigation. At that point Clare House was already bankrupt. Ms. Raun fully moved out of her home by July 1st, but never received the money owed to her by Clare House under the contract.

---

[2] They initially sought to restrain the trustee's sale, but subsequently entered a stipulation, agreeing to allow the sale to proceed while reserving their asserted property rights.

In December 2010, the bankruptcy court ruled on summary judgment that Ms. Raun and one other resident, having duly recorded their residence agreements, had occupancy rights superior to the Caudill Group. In that decision, the rights of the other residents were sent to trial on the issue of whether the Caudill Group had constructive knowledge of the unrecorded agreements. The decision also determined that the contractual right to repayment was not an interest in real property and could only be enforced against the party to the contract, Clare House. In June 2011, the bankruptcy court ruled after trial that the other residents had occupancy rights superior to the Caudill Group, but did not have ownership rights to the bungalows.

Following an unsuccessful appeal by the bungalow occupants, Ms. Raun brought the present action against the Caudill Group and Mr. Gleesing. She asserted that the Caudill Group should have known they could not foreclose her interest in the property and should not have sent her the notices of trustee's sales that threatened eviction. She asserted that those threats induced her to vacate her home and abandon her interest in the property. The trial court granted the defendants' motions for summary judgment and awarded CR 11 sanctions to Mr. Gleesing against Ms. Raun's attorney for the frivolous emotional distress claim brought against him. Ms. Raun and her attorney then appealed to this court. The two appeals were consolidated and eventually were argued to a panel.

4

No. 32366-8-III
*Raun v. Caudill, et al.*

ANALYSIS

This appeal presents four issues that we address in the following order. First we will consider Ms. Raun's property-related arguments, followed by her emotional distress claims. We will then consider the propriety of the CR 11 award in favor of Mr. Gleesing before turning to the respondents' joint claims that they are entitled to a fee award for responding to frivolous litigation.

Appellate review of the first two issues is governed by well-settled principles. An appellate court reviews a summary judgment de novo; the inquiry is the same as the trial court's inquiry. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Id.* If there is no genuine issue of material fact, summary judgment will be granted if the moving party is entitled to judgment as a matter of law. *Id.*; *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 93, 993 P.2d 259 (2000).

*Property-Related Claims*

Ms. Raun contends that the defendants wrongfully evicted her from the bungalow and thereby also converted and trespassed on her property. These claims arise from the use of the statutory notice language provided in the "Deed of Trust Act" (DTA). The trial court correctly determined that the use of the statutory notice of nonjudicial foreclosure did not amount to an unlawful eviction.

5

In order to state a claim for unlawful eviction, a plaintiff must show that a landlord removed or excluded the tenant from the premises. RCW 59.18.290.[3] Ms. Raun's property claims all stem from an assertion that the Caudill Group and Mr. Gleesing should have known that she possessed a life tenancy in the bungalow and that they would have been unable to evict her following any foreclosure. Consequently, she contends that the repeated threats of eviction contained in the notices of trustee's sales caused her to vacate her home. However, her claims fall short because she was never threatened with eviction.

In July 2009 and April 2010[4], Ms. Raun received notices of trustee's sales that included the following language:

> NOTICE TO OCCUPANTS OR TENANTS
> The Purchaser at the trustee's sale is entitled to possession of the property on the 20th day following the sale, as against the grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants and tenants. After the 20th day following the sale the purchaser has the right to evict occupants and tenants by summary proceedings under the unlawful detainer act, chapter 59.12 RCW.

Clerk's Papers (CP) at 244.

---

[3] The Caudill Group did not purchase the property until two years after the notices at issue in this case were sent. They would not appear to qualify as landlords under the statute.

[4] Ms. Raun asserts in her brief that the threats began with the initial notice received in 2008. However, that notice did not include the language about eviction. Clerk's Papers at 237-239.

The perception by a nonlawyer that this language threatened eviction is not entirely unreasonable, given that this notice is fairly dense and legalistic. However, the notice merely apprises occupants that the purchaser would have a right to evict them if their interest was junior to the deed of trust. By the time Ms. Raun received the first of these notices, she already was a party to an action to quiet title to the property and received the notice through counsel. One of the primary issues being litigated in that action was which party possessed the superior and subordinate rights to the property. In December 2010, the bankruptcy court ruled that Ms. Raun had an occupancy right senior to the lenders.[5] CP at 271-280. Under the explicit terms of the contract, which Ms. Raun had properly recorded with the county, her occupancy rights would not be subordinate to the subsequent deed of trust. She should have known through her attorney that the notice did not even state the possibility that she would be evicted.[6]

---

[5] In the 2010 ruling, the bankruptcy court granted summary judgment in favor of Ms. Raun, finding that her occupancy interest was superior to the Caudill Group's deed of trust. However, it held that there was a question of fact as to notice on the other tenant's rights, because they had not recorded their agreements. Ms. Raun assigns substantial weight to the subsequent trial determination that the Caudill Group failed to make a reasonable inquiry into the rights of those occupants without recorded agreements, making their rights under the deed of trust subordinate to the unrecorded agreements. However, this determination is not relevant to the present issues.

[6] Some of the other occupants possibly had inferior rights to the deed of trust. Consequently the notice was statutorily required in order to possibly foreclose on those rights.

7

The trial court correctly determined that, as a matter of law, inclusion of the statutory notice did not improperly threaten to evict Ms. Raun. The statutory notice simply does not bear the construction she now gives it, nor should she have given it that construction since she was involved in litigation to determine the status of her property interest. The property-related claims were without merit and properly dismissed by the trial judge.

*Emotional Distress Claims*

Ms. Raun also asserted that the statutory notice given her constituted both negligent infliction of emotional distress and outrage. While noting that the statutory notices given Ms. Raun did not arise to the level of extreme and outrageous conduct, the trial court dismissed these counts due to the statute of limitations. We reach the same conclusion for somewhat different reasons.

In order to prevail on a claim of negligent infliction of emotional distress, a party must show (1) the existence of a duty, (2) breach of that duty, (3) causation, and (4) harm. That harm must be demonstrated by evidence of emotional distress evidenced by objective symptomology. *Hunsley v. Giard*, 87 Wn.2d 424, 433-436, 553 P.2d 1096 (1976). The elements of a claim of outrage require a plaintiff to show (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 51, 59 P.3d 611 (2002).

8

The trial court dismissed these two causes of action against the Caudill Group due to the statute of limitations. However, Ms. Raun correctly points out that some of the allegedly tortious conduct occurred within the statute of limitations period. Consequently, the trial court erred in dismissing the entire claim on that ground. *See generally, Cox v. Oasis Physical Therapy, PLLC*, 153 Wn. App. 176, 222 P.3d 119 (2009). Nonetheless, the claims were properly dismissed.

As the trial court recognized, the statutory notice is critical to this determination. With respect to the outrage claim, we agree that the adherence to a statutorily prescribed process cannot be characterized as extreme and outrageous behavior. Accordingly, the outrage claims fail on the first element.[7]

The negligent infliction of emotional distress claim flounders for a similar reason. This claim, too, turns on the statutory notice given by the defendants to the bungalow occupants. Ms. Raun draws on some language out of one of the bankruptcy court decisions to the effect that the Caudill Group breached a duty to do a reasonable investigation into the occupancy agreements of those who had not recorded their agreements with the County. The failure to inquire led to the property rights of the Caudill Group being subordinated to those residents. CP at 290. However, this breach has no causal link to the alleged harm to Ms. Raun.

---

[7] The evidence does not appear sufficient to support the remaining elements, but we need not address them.

9

Ms. Raun asserts that had the Caudill Group done an investigation, they never would have sent the notices that caused Ms. Raun her distress. However, those notices were necessary if any occupant had rights junior to the deed of trust, an unresolved issue in the then ongoing litigation. And, as previously discussed, the notices did not threaten Ms. Raun with eviction. It was her misperception that caused her distress.[8] That reaction simply was not a foreseeable result of sending the statutory notice. Accordingly, we conclude summary judgment was proper because the Caudill Group did not breach any duty to Ms. Raun and her response to the notice was not foreseeable.

The trial court properly dismissed the emotional distress related claims.

*CR 11 Sanctions in Favor of Gleesing*

Ms. Raun also challenges the trial court's award of CR 11 sanctions to Mr. Gleesing for his defense of the emotional distress claims after it became apparent that his only role in the proceedings was as trustee during the nonjudicial foreclosure proceedings. The trial court did not abuse its discretion.

An attorney shall not sign or submit a pleading unless "(1) it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) it is not interposed for any improper purpose." CR 11(a). When a pleading is in violation of that

---

[8] We need not address Caudill's contention that the medical evidence of emotional distress also was lacking.

10

rule, the trial court may, either by motion or upon its own initiative, impose an appropriate sanction on the offending attorney or party. *Id.* CR 11 sanctions may only be imposed in compliance with due process of law; in this context, that means a party must be given notice and the opportunity to be heard. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 224, 829 P.2d 1099 (1992). Sanctions awarded under CR 11 are reviewed for an abuse of discretion. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338-339, 858 P.2d 1054 (1993). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The trial court sanctioned Ms. Raun's attorney $23,000 for bringing frivolous emotional distress claims against Mr. Gleesing. The trial court determined that Mr. Gleesing's participation as the trustee in foreclosure was limited, his duties owed were only those owed by a trustee under the DTA, and there were no allegations of any breach in those duties. The assessment ran from the date of a letter sent November 7, 2013, informing Ms. Raun's counsel that the claims were frivolous, rather than from the date of the formal CR 11 sanction request sent December 20, 2013. Ms. Raun contends that there should have been no sanction, but that if one were permissible, it should only run for expenses after the December notice.

Appellants contend that Gleesing owed Ms. Raun a duty of care, but the only claim they raise is an obligation to ascertain the status of the bungalow's occupants.

11

While that might be appropriate for a purchaser seeking to obtain valid title to property, it is not an obligation of a DTA trustee. The trial court found that the trustee had complied with his statutory obligations under the DTA to the property owner and the lenders. Appellants do not contend otherwise. Instead, they implicitly seek an expansion of the trustee's statutory obligations without providing any relevant authority or argument. The trial court had a very tenable basis for imposing sanctions.

Appellants also contend the award should have only applied to fees expended after the formal notice of CR 11 sanctions was filed, pointing to the due process protections afforded to a CR 11 sanction. Gleesing accurately notes this argument is akin to the safe harbor provision found in the Federal Rules, but not in Washington's. *See* FRCP Rule 11(c)(2). That rule allows a party 21 days after notice has been given to correct a challenged filing, but does not establish the sanction notice or any other date as the trigger for imposing sanctions. Washington's failure to enact this provision makes it a weak reed for appellants to cling to, but a more compelling reason to reject the argument is that the appellants never sought to amend or retract the emotional distress claims against Gleesing. Never having sought the safe harbor, they are not entitled to its protections.

In any event, the date selected by the court corresponds to the first letter informing appellants that the claims were frivolous and should voluntarily be dismissed. The appellants were on notice that the claims were considered frivolous and chose to litigate

12

No. 32366-8-III
*Raun v. Caudill, et al.*

rather than mitigate. Having been given the chance to correct the problem—and having declined to act—appellants can hardly contend that they did not know that sanctions would be sought.

The trial court had a very tenable basis for imposing sanctions and for setting the award for costs expended after notice had been given. The court did not abuse its discretion.

*Attorney Fees on Appeal*

Both sets of respondents seek attorney fees for needing to respond to a frivolous appeal. We exercise our discretion and decline both requests.

This court is empowered by RAP 18.9(a)[9] to sanction a party for filing a frivolous appeal. Although without merit, we are not inclined to find this appeal frivolous; we understand respondents' concerns that this matter has been litigated long past the point where it should have ended. Ms. Raun correctly pointed to the trial court's partial error on the statute of limitations issue and her safe harbor claim, although weak, was colorable. The appeal therefore was not utterly without merit. We decline to impose

_____

[9] The Caudill Group argues this issue as a CR 11 matter even though the Civil Rules do not apply to the appellate courts unless expressly referenced by the Rules of Appellate Procedure. At one point CR 11 applied to the appellate courts due to express reference in former RAP 18.7 (1984), but that reference was removed in 1994. *See* Amendment to RAP 18.7, 124 Wn.2d 1101, 1141 (1994).

13

No. 32366-8-III
*Raun v. Caudill, et al.*

further sanctions, but respondents are entitled to their costs in this court upon compliance

with RAP 14.4. RAP 14.1.

The judgments of the trial court are affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, A.C.J.

14