[No. 58144-4.   En Banc.   March 26, 1992.]

BEVERLY ALLEN, *as Personal Representative, Petitioner*, v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

754

*Stephen P. Schnautz* (of *Castle, Schnautz, Hilfer & Leemon, P.S.*), for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Rene D. Tomisser, Assistant,* for respondents.

JOHNSON, J. — Beverly Allen sued the State for paroling two men who later murdered her husband. The trial judge ruled on summary judgment that Allen's suit was barred by the 3-year statute of limitations and dismissed the action. Allen had argued that her cause of action was timely under the discovery rule. The Court of Appeals upheld the summary judgment dismissal, and we affirm. Allen did not file her suit within 3 years of the date when she should have discovered the essential elements of her cause of action.

On December 18, 1979, a masked gunman entered the Yorktown Restaurant in Tacoma and fired shots around the

room. Three people were killed, including Stephen Allen, and three others were injured. Stephen Allen and his wife, Beverly, had traveled to Tacoma from their home in Mount Vernon to attend a reunion of former co-workers from Western State Hospital.

Stephen's wife, Beverly, was not at the restaurant, but she was told of the murder later that night. When she talked to the police, they did not know who had fired the shots and thus could not tell her who was responsible for the murder.

Beverly Allen returned to the family home in Mount Vernon shortly thereafter, still not knowing who had killed her husband. She remained in contact with the Pierce County Sheriff's Office for the next few months, but all she could find out was that they were still working on the case and had not yet learned the gunman's identity. The record does not indicate how many times she called during this time period, although Beverly Allen herself says the contact during this period "wasn't . . . real intense". She stopped calling when the detective assigned to the case was transferred from the office. Beverly Allen believed the detective had not been replaced.

In May 1982, a Pierce County jury found John Frederick Anderson and Robert Stratton guilty of the Yorktown murders.[1] At the time of the murder, Stratton and Anderson were on parole, having been conditionally discharged from supervision.

According to Beverly Allen and members of her family, they were unaware at this time that her husband's killers had been identified and convicted.[2] Beverly Allen's father,

---

[1]The defendants apparently were convicted for their roles in planning the attack, even though only one person fired the shots.

[2]Beverly Allen stated in an affidavit, "I believe I heard that somebody had been convicted of the murder sometime in 1982 or 1983". Clerk's Papers, at 20. The Court of Appeals relied on this statement to conclude she knew this fact in 1982 or 1983. Allen challenges this conclusion, arguing she was referring to the date of the trial, not the date on which she heard the news. Because this statement is arguably ambiguous, and because the evidence in this case must be viewed most favorably to Beverly Allen as the party opposing summary judgment, we do not rely on this statement in deciding the case.

who also lives in Mount Vernon, maintains he did not learn of the convictions until late 1983, when he received in the mail a number of newspaper clippings describing the trial. Most of the articles contained in the record were printed in the Tacoma News Tribune. One short article, however, was written by a national wire service and appeared in the Seattle Post-Intelligencer, a newspaper of general circulation around the Puget Sound region. Additionally, a longer article was in the Northwest Weekend, a newspaper apparently based in or around Mount Vernon.[3] Three of the articles, including the article from the Northwest Weekend, stated both Stratton and Anderson had previous homicide convictions. The article in the Northwest Weekend indicated the reporter had unsuccessfully tried to contact Beverly Allen to get her reaction.

The record reflects Beverly Allen's father knew of the articles but decided not to show the articles to her because "[t]he holidays have always been an especially difficult time for Bev and her family since Steve was killed." Clerk's Papers, at 36-37.

In March 1984, Beverly Allen's son, Troy, discovered the articles while visiting his grandparents. Troy showed the articles to an attorney in May 1984, who suggested to Troy there might be a cause of action against the State for the manner in which it paroled Steve Allen's killers.

Troy did not immediately tell his mother about the articles or his discussions with the attorney "because she was trying so hard to put the murders behind her and I did not want to upset her." Clerk's Papers, at 47.

Troy's attorney arranged for further investigation and then told Troy of the State's role in paroling the men who

---

[3] Unfortunately, the newspaper clipping does not include the portion of the page that would identify where the paper is published, but the article itself reveals it must be published in the Mount Vernon area. The article is entitled, "Jury convicts killers of Mount Vernon man", and it focuses solely on the murder of Stephen Allen, even though two others were killed and three others seriously wounded in the Tacoma shooting. Moreover, the trial judge in his oral ruling stated that the article was apparently from a Mount Vernon paper, and that point has not been challenged by the parties.

killed his father. It appears, however, that Beverly Allen was not told of the results of this investigation until September 1985, some 18 months after Troy first saw the articles.

On October 9, 1985, Beverly Allen filed a wrongful death action against the State on behalf of herself and her children. The complaint alleges the State negligently paroled Stratton and Anderson.

The State moved for summary judgment to dismiss the action based on the 3-year statute of limitations. The trial court granted the motion, reasoning that Beverly Allen should have discovered her cause of action in May 1982, when the newspaper articles describing the trial and the killers' previous homicide convictions were printed.

Beverly Allen appealed to the Court of Appeals, which affirmed. The Court of Appeals did not directly address whether the discovery rule applied in this case, reasoning even if that rule were applied, it would only postpone the accrual of her cause of action until May 1982, and her complaint was not filed within 3 years of that date. *Allen v. State*, 60 Wn. App. 273, 803 P.2d 54, *review granted*, 117 Wn.2d 1001 (1991).

Allen obtained review in this court. We must decide whether application of the discovery rule saves Allen's cause of action from being barred by the statute of limitations.

■ An appellate court reviews a summary judgment de novo. The appellate court, like the trial court before it, analyzes whether any genuine issues of material fact exist and whether one party is entitled to judgment as a matter of law. CR 56(c); *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 351, 779 P.2d 697 (1989).

■■ Wrongful death actions are governed by the 3-year statute of limitations. *White v. Johns-Manville Corp.*, 103 Wn.2d 344, 348, 693 P.2d 687, 49 A.L.R.4th 955 (1985) (applying the "catchall" 3-year statute of limitations of RCW 4.16.080(2) for wrongful death claims). Consequently, a wrongful death action must be brought within 3 years of the date when the action accrues. *See* RCW 4.16.005. Under the

discovery rule,[4] a cause of action accrues when the plaintiff knew or should have known the essential elements of the cause of action: duty, breach, causation and damages. *See Gevaart v. Metco Constr., Inc.*, 111 Wn.2d 499, 501, 760 P.2d 348 (1988); *White*, at 348.

The discovery rule requires a plaintiff to use due diligence in discovering the basis for the cause of action. *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 772, 733 P.2d 530 (1987); *White*, at 353-54; *Gevaart*, at 502. In other words, the discovery rule will postpone the running of a statute of limitations only until the time when a plaintiff, through the exercise of due diligence, should have discovered the basis for the cause of action. A cause of action will accrue on that date even if *actual* discovery did not occur until later.

The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action. The action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action. Were the rule otherwise, the discovery rule would postpone accrual in every case until the plaintiff consults an attorney. *Reichelt*, at 769; *Gevaart*, at 502.

The record reflects that Beverly Allen's attempts to discover the facts surrounding her husband's death were minimal. She kept in touch with the Pierce County Sheriff's Office for only a few months after her husband's death in 1979, and even by her own account that contact was not intensive. The record reveals she made *no* other attempt to discover what happened to her husband until 1985 when the facts were presented to her by her son and his attorney. Under the facts of this case, we conclude due diligence was not exercised.

---

[4]The parties each filed briefs in this court assuming the discovery rule applies to this case. Because no party has argued here that the rule does not apply, we too assume its applicability. *See* RAP 12.1(a). Issues of applicability are addressed in *In re Estates of Hibbard*, 118 Wn.2d 737, 826 P.2d 690 (1992).

Moreover, Allen could have discovered her cause of action during May 1982 even though she did not stay in contact with Pierce County authorities. In that month, her husband's murderers were convicted in a trial which received considerable attention in local newspapers. Many of the articles written about the trial appeared in a newspaper published in Tacoma, where Allen had previously lived and where she visited after moving to Mount Vernon. Other articles were written in papers likely to reach the Mount Vernon area where Allen lived. Additionally, many of the articles indicated both of the murderers had recently been in prison for previous homicides, which would have put Allen on notice to inquire further. Even if Allen had done no more than read local newspapers, or talk with friends who had, she would have learned the facts underlying her claim against the State. Indeed, the record reflects Allen's own family had the articles, yet did not show them to her for almost 2 years. The facts were all available for Allen to discover through the exercise of due diligence.

The record reveals only one explanation for Allen's inaction: she wanted to put her husband's death behind her and not hear more about it. Her son and her father both indicated it was for this reason they postponed showing her the news articles regarding the trial.

Although certainly understandable, Allen's difficulties in dealing with her husband's death do not excuse her failure to exercise due diligence. As a federal appellate court phrased this point:

> [A]ny statute of limitations that puts inquiry burdens on a plaintiff . . . entails a degree of ghoulish behavior. Patients or survivors, whose instinct may well be to shut off from their minds the grim experience through which they have passed, are required instead to follow up on their leads. For persons of any sensitivity this must be a difficult or even repugnant process. Yet, to protect defendants from stale claims, legislatures put potential plaintiffs to the hard choice of proceeding with such inquiries or risking loss of possible claims.

(Citation omitted.) *Sexton v. United States*, 832 F.2d 629, 636 (D.C. Cir. 1987).

■ Beverly Allen also argues that this case involves issues of fact and should not be decided by summary judgment. As she correctly points out, analysis of due diligence raises issues of fact. *See, e.g., Honcoop v. State*, 111 Wn.2d 182, 194, 759 P.2d 1188 (1988); *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 510, 598 P.2d 1358 (1979). Nevertheless, this does not mean that summary judgment on the issue is always improper. Rather, as this court has often stated, factual questions may be decided as a matter of summary judgment if reasonable minds can reach but one conclusion on them. *See, e.g., Central Wash. Bank*, at 353. Even more specifically, Washington courts have held that summary judgment may be proper on the very issues involved in this case. *See Reichelt; Richardson v. Denend*, 59 Wn. App. 92, 95, 795 P.2d 1192 (1990), *review denied*, 116 Wn.2d 1005 (1991).

Here, reasonable minds could only conclude that due diligence would have alerted Beverly Allen to the factual basis for her action more than 3 years before she filed suit. Allen's action is barred by the statute of limitations.

We affirm.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.