[No. 22520-8-III.   Division Three.   February 24, 2005.]

KIMBERLY A. MAYER, *Appellant*, v. JUDITH HUESNER ET AL., *Respondents*.

*Uche H. Umuolo*, for appellant.

*James B. King* and *Christopher J. Kerley* (of *Keefe, King & Bowman, P.S.*) and *Rocco N. Treppiedi*, for respondents.

¶1 BROWN, J. — Kimberly A. Mayer appeals the summary judgment dismissal of her 2002 suit against her former workers' compensation doctor, Judith Heusner, M.D.,[1] her former employer, The Boeing Corporation, and Boeing's employee, Pamela Brown. Ms. Mayer's suit involves Dr. Heusner's role in 1998 as Boeing's consultant in her former patient's failed attempt to return to work. Ms. Mayer contends the court erred in deciding her confidentiality and privacy-based damage claims were waived and time barred. We hold in all claims Ms. Mayer waived her right to patient confidentiality and privacy by putting her health at issue in both her workers' compensation claim under RCW 51.36.060 and her return to work effort under her collective bargaining agreement. Therefore, we do not reach the statute of limitations issues and affirm.

## FACTS

¶2 On February 23, 1994, Ms. Mayer filed a workers' compensation claim alleging repetitive stress injury to her hands while working at Boeing's Spokane plant. She signed a medical release authorization for her self-insured employer:

> MEDICAL RELEASE AUTHORIZATION. I HEREBY AUTHORIZE MY PHYSICIAN, HOSPITAL AGENCY OR ORGANIZATION TO DISCLOSE TO MY EMPLOYER OR HIS REPRESENTATIVE, OR THE DEPARTMENT OF LABOR & INDUSTRIES ANY MEDICAL RECORDS OR OTHER INFORMATION REGARDING TREATMENT WHICH HAS PREVIOUSLY BEEN FURNISHED TO ME.

Clerk's Papers (CP) at 159.

---

[1] Dr. Heusner's name is misspelled "Huesner" in the original complaint caption but is spelled correctly throughout the text of this opinion.

¶3 From December 1994 through June 1996, Dr. Heusner treated Ms. Mayer and diagnosed her with bilateral hand and wrist tendonitis. Dr. Heusner determined Ms. Mayer's objective symptoms were worsening, despite work restrictions and time off. Dr. Heusner opined to Boeing that continued hand and arm motions would further worsen Ms. Mayer's condition and interfere with her ability to accomplish the tasks and activities of daily living. In 1995, Ms. Mayer was given a medical leave of absence from Boeing and began receiving time loss benefits from workers' compensation. In May 1997, Paula Lantsberger, M.D. replaced Dr. Heusner. In June 1997, Dr. Heusner began working as a medical consultant for Boeing.

¶4 In March 1998, Boeing's Medical Placement Review Board (MPRB) reviewed Ms. Mayer's reinstatement status at Ms. Mayer's request under the return-to-work process in the collective bargaining agreement (CBA). Ms. Mayer was still receiving time loss benefits in 1997 when she applied to return to work. Boeing medical personnel make medical recommendations to the MPRB so it can match jobs to that data. The CBA review process required Ms. Mayer to submit her medical information to Boeing and allowed Boeing to have Ms. Mayer examined by a physician. Ms. Mayer submitted Dr. Lantsberger's letter indicating she could return to work with restrictions on lifting and carrying, repetitive hand motions, forceful grasping, high impact vibration, low impact vibration and handling cold items.

¶5 Pam Brown, Boeing's health services administrator responsible for coordinating Ms. Mayer's request for the medical department, asked Dr. Heusner, as Boeing's local consultant, to review Ms. Mayer's medical information, apparently for submission to Dr. Ernest Fatta, Boeing's Chief Physician in Seattle. Dr. Heusner's January 27, 1998 letter to Dr. Fatta identifies Ms. Mayer's workers' compensation claim number and discusses Ms. Mayer's "long-standing worker's compensation claim." CP at 367.

¶6 Using medical information supplied by Ms. Brown from Boeing's file, Dr. Heusner detailed Ms. Mayer's history

and symptoms, including her own prior treatment up to November 1995, Dr. Lantsberger's treatment, and Dr. Lantsberger's opinion that Ms. Mayer was medically able to return to work. Dr. Heusner opined in her letter to Dr. Fatta that based on Dr. Lantsberger's stated restrictions and her own opinion that the restrictions were "permanent," she did "not consider Ms. Mayer a candidate for a return-to-work at the hand-intensive jobs available at Boeing." CP at 368.

¶7 The record is unclear if the MPRB actually reviewed Dr. Heusner's letter when making its March 1998 determinations. In any event, we presume in this summary judgment review, like the trial court, that Dr. Heusner's letter negatively influenced Boeing's medical recommendations to the MPRB. The MPRB decided Ms. Mayer could not return to work. Ms. Mayer did not file a grievance or review her file after receiving the March 1998 MPRB decision.

¶8 In late 2000, Ms. Mayer again asked Boeing to return to work. After an initial denial in May 2001, Boeing and Dr. Lantsberger agreed Ms. Mayer's condition had improved sufficiently to return to work in a new job fitting her limitations. In April 2001, during this process, Ms. Mayer requested her job analysis file. In June 2001, Ms. Mayer received her file and found Dr. Heusner's January 27, 1998 letter. Ms. Mayer returned to work in June 2001 at her previous pay level, but under the CBA, she lost seniority since she was rehired more than five years after she left Boeing. Ms. Mayer was laid off in December 2001 in a generalized reduction in force.

¶9 In February 2002, Ms. Mayer sued Dr. Heusner for breach of confidentiality under the Uniform Health Care Information Act, chapter 70.02 RCW, breach of privacy, breach of fiduciary duty, and interference with a business relationship based mainly on Dr. Heusner's January 1998 letter to Dr. Fatta. In December 2002, Ms. Mayer's amended complaint added claims against Boeing and Ms. Brown for breach of her right to privacy and negligent failure to supervise Ms. Brown in her release of her medical

information and consultation request to Dr. Heusner, all leading to the March 1998 return-to-work denial.

¶10 The defendants successfully moved for summary judgment dismissal of all causes of action. The court decided Ms. Mayer waived her right to patient confidentiality by putting her health "at issue" in her workers' compensation claim under RCW 51.36.060. Further, the court decided Ms. Mayer's other claims were barred by the statute of limitations. Ms. Mayer appealed.

## ANALYSIS

### Physician/Patient Confidentiality Waived

¶11 The issue is whether the trial court erred in deciding Ms. Mayer waived her physician/patient privilege and privacy rights with Dr. Heusner by claiming worker's compensation benefits and seeking to return to work under her CBA.

■■ ¶12 Summary judgment is appropriate when "the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998); CR 56(c). "An appellate court engages in the same inquiry as the trial court when reviewing an order for summary judgment." *Id*. The facts and reasonable inferences from the facts are viewed in the light most favorable to the nonmoving party. *See Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). We review questions of law de novo. *Id*.

■ ¶13 Washington recognizes a common law right to privacy. *Reid v. Pierce County*, 136 Wn.2d 195, 961 P.2d 333 (1998). Washington has adopted the *Restatement (Second) of Torts* § 652D (1977) general rule for invasion of privacy, which provides:

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

"(a) would be highly offensive to a reasonable person, and

"(b) is not of legitimate concern to the public."

*Reid,* 136 Wn.2d at 205 (quoting RESTATEMENT (SECOND) OF TORTS § 652D (1977)).

¶14 Ms. Mayer contends Dr. Heusner breached the Uniform Health Care Information Act by discussing her medical condition and prior treatment in the January 1998 letter to Boeing. Under RCW 70.02.020,

> a health care provider, an individual who assists a health care provider in the delivery of health care, or an agent and employee of a health care provider may not disclose health care information about a patient to any other person without the patient's written authorization. A disclosure made under a person's written authorization must conform to the authorization.

¶15 Under the act, health care information is defined as, "any information . . . that . . . directly relates to the patient's health care." RCW 70.02.010(6). Dr. Heusner correctly argues Ms. Mayer authorized the earlier disclosure. Ms. Mayer does not dispute Dr. Heusner acted as Boeing's medical consultant in 1998. Dr. Heusner reviewed Dr. Lantsberger's new information with other information in Ms. Mayer's file before writing Dr. Fatta. Dr. Heusner opined that Dr. Lantsberger's restrictions were appropriate, but "permanent," and Ms. Mayer was not "a candidate for a return-to-work at the hand-intensive jobs available at Boeing." CP at 368.

¶16 No material facts remain in dispute regarding whether Dr. Heusner acted upon Ms. Mayer's express waiver. No material facts remain regarding the CBA's requirement for Ms. Mayer to provide medical information relevant to her return to work. Once Ms. Mayer raised her medical condition, she effectively waived her confidentiality concerns. *Loudon v. Mhyre,* 110 Wn.2d 675, 756 P.2d 138 (1988). Boeing could look at all its available medical records bearing on the issue. Considering all, reasonable minds could reach but one conclusion: Ms. Mayer's authorization

and application for return to work under the CBA waived her confidentiality and privacy rights in her medical information. *See Alexander v. County of Walla Walla*, 84 Wn. App. 687, 692, 929 P.2d 1182 (1997).

■ ¶17 Further, RCW 51.36.060 eliminates liability for Dr. Heusner's initial medical disclosure to Boeing, as a self insurer. RCW 51.36.060 requires physicians attending injured workers in a workers' compensation setting to make "all medical information . . . relevant to the particular injury . . . available at *any stage* in the proceedings to the employer . . . *and no person shall incur any legal liability by reason of releasing such information.*" RCW 51.36.060 (emphasis added). Ms. Mayer's concerns about Dr. Heusner's role are misplaced since Dr. Heusner's medical information was already properly within Boeing's file and logically relevant to her return-to-work request.

■ ¶18 Additionally, Ms. Mayer's privacy claims do not fit within the invasion of privacy framework. *See Berger v. Sonneland*, 101 Wn. App. 141, 155-56, 1 P.3d 1187 (2000) (declining to find physician breached patient's privacy by releasing patient's medical information to another doctor because it was not a public disclosure), *reversed on other grounds*, 144 Wn.2d 91, 26 P.3d 257 (2001). Disclosure by Boeing to Dr. Heusner was internal and private, not public. *See id.* The same is true for Dr. Heusner's disclosure to Dr. Fatta, Boeing's chief physician. Thus, reasonable minds could reach but one conclusion; the communications were private. Therefore, Ms. Mayer's privacy, negligence, and business interference claims are unfounded and fail.

### Statute of Limitations

¶19 The superior court disposed of the breach of fiduciary duty, negligent failure to supervise, and interference with business relationship claims in its statute of limitations ruling. Since our above analysis fully resolves this dispute, we note the statute of limitations issue in passing

to acknowledge the arguments and clarify our above holding.

¶20 The Uniform Health Care Information Act claims are governed by a two-year statute of limitations. RCW 70.02.170(3). The statute of limitations for negligent failure to supervise, breach of fiduciary duty, and interference with a business relationship is three years. RCW 4.16.080(2). Generally, the statute of limitations accrues when a party has "the right to apply to a court for relief." *Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 219, 543 P.2d 338 (1975). The parties argue Ms. Mayer's claims as accruing in December 1997 when Ms. Brown gave Dr. Heusner Ms. Mayer's medical information, and in January 1998 when Dr. Heusner wrote Dr. Fatta. Above, we decided both events were proper because Ms. Mayer authorized disclosure and put her physical condition at issue. Additionally, Boeing's analysis of Ms. Mayer's condition was internal and private. Thus, whether Ms. Mayer's 2002 complaints were timely, relative to the 1997 and 1998 events under the discovery rule, matters not. Thus, we do not analyze the discovery rule issue.

¶21 "Under the discovery rule, a cause of action accrues when the plaintiff knew or should have known the essential elements of the cause of action." *Allen v. State*, 118 Wn.2d 753, 757-58, 826 P.2d 200 (1992) (footnote omitted). "[T]he discovery rule will postpone the running of the statute of limitations only until the time when a plaintiff, through the exercise of due diligence, should have discovered the basis for a cause of action." *Id.* at 758. We take this opportunity to emphasize that a due diligence inquiry normally involves a fact question unless reasonable minds could reach but one conclusion about those facts. *See id.* at 760.

¶22 In sum, while our analysis differs from that of the trial court, the trial court did not err in granting summary

124

judgment dismissal of Ms. Mayer's amended complaint.

¶23 Affirmed.

SCHULTHEIS and KURTZ, JJ., concur.

Review denied at 155 Wn.2d 1019 (2005).