
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SHAUNA SOULE and SHELDON SOULE and their marital community, | ) ) ) | No. 40941-4-III |
| Appellants, | ) ) ) | |
| v. | ) ) | |
| ROBERT FERGUSON, individually and in his official capacity as Washington State Attorney General; DAVID HUEY, individually and in his official capacity as Washington State Assistant Attorney General; SHANNON SMITH, individually and in her official capacity as Washington State Assistant Attorney General, Consumer Protection Division; MICHELLE FERAZZA, individually and in her official capacity as a Legal Assistant for the State Attorney General's Office; RICH ZWICKER, individually and in his official capacity as Foreclosure Compliance Coordinator for the Washington State Attorney General; TODD BOWERS, individually and in his official capacity as Washington State Deputy Attorney General; THE ATTORNEY GENERAL'S OFFICE FOR THE STATE OF WASHINGTON; and JOHN and JANE DOES 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) | |

MURPHY, J. — Shauna and Sheldon Soule (the Soules) appeal the trial court's dismissal of their complaint against then Attorney General Robert Ferguson and other employees of the Attorney General's Office (collectively the AGO) under CR 12(b)(6). The trial court ruled the claims were barred by the statute of limitations. On appeal, the Soules contend the trial court erred by refusing to apply the discovery rule or equitable tolling and by not expressly ruling on their request for judicial notice of materials submitted in response to the AGO's motion to dismiss.

We conclude the claims are time-barred as a matter of law. Neither the discovery rule nor equitable tolling applies. We therefore affirm.

## FACTS

The facts are taken from the Soules' complaint and the materials presented to the trial court on the AGO's CR 12(b)(6) motion.

*Allegations from the complaint filed on March 5, 2024*

The Soules refinanced their home in 2003 with what they allege was a World Savings Pick a Pay loan. The loan was ultimately acquired by Wells Fargo in 2008. In late 2009, the Soules applied for a HAMP (Home Affordable Modification Program) mortgage modification. In October 2010, they learned of a statewide settlement between the AGO and Wells Fargo concerning Pick a Pay loans and an associated Assurance of Discontinuance (AOD) that established a hotline for borrower relief.

Believing their loan qualified, the Soules contacted the AGO after the number for the hotline proved inoperable. In response, an AGO staff member provided the Soules with the same non-functioning number and suggested they contact a housing counselor.[1] The Soules wrote a series of letters to Wells Fargo stating they had a Pick a Pay loan and Wells Fargo's net present value (NVP) calculations were incorrect, but Wells Fargo never responded. In 2011, the Soules complained to the AGO, but claim the AGO did not initially respond. During this time, the Soules continued to apply for a loan modification under HAMP and were under threat of foreclosure by Wells Fargo. In 2013, the Soules and Wells Fargo attended a Foreclosure Fairness Mediation required by state law. According to the Soules, at the mediation, Wells Fargo presented a redacted version of the Soules' mortgage note and told the Soules they did not have a Pick a Pay loan. At a second mediation in 2013, the Soules presented an unredacted version of their mortgage note and Pick a Pay mortgage statement. The Soules claim these documents were ignored by Wells Fargo and the mediator. After the failed mediations, the Soules contacted the AGO in 2013 to complain that Wells Fargo was perpetrating mortgage fraud, and provided documents from the

---

[1] The Soules claimed in their lawsuit that the settlement agreement entered into was "the first of its kind [and] there were very few, if any, housing counselors in Washington state with experience in Pick a Pay loans." Clerk's Papers at 207. The Soules further claimed that a housing counselor would not have authority to enforce the settlement agreement.

mediations to show Wells Fargo illegally redacted their mortgage note. The AGO responded in May 2013 stating, "Your complaint has been added to our ongoing investigation of the mortgage and servicing industries and we thank you for sharing it with us. However, it is important to note that our office is prohibited from representing individuals so we cannot intervene in your case." Clerk's Papers (CP) at 208.

The Soules contacted the AGO in June 2013 to again inform the AGO of the impending home foreclosure. The AGO responded with a statement similar to the May 2013 response, including that the AGO cannot represent individuals. In their complaint, the Soules allege "[t]hese statements were both legally and factually untrue." CP at 209. In support of this allegation, the Soules cited documents received through a later public records request that they claimed showed the AGO "regularly, and selectively, did intervene and negotiate to stop foreclosures . . . on behalf of Pick a Pay borrowers" but did not intervene for the Soules. CP at 209.

Wells Fargo foreclosed on the Soules' home in December 2013.

The Soules continued to complain to the AGO. In 2014, the AGO responded to the Soules stating the AGO was still investigating the Soules' complaints, with a follow up letter stating the AGO communicated with Wells Fargo and were told that the Soules (1) did not have a Pick a Pay loan, (2) already received a modification, and (3) did not qualify for any further modification. The Soules maintain their allegation that they did have

a Pick a Pay loan, they did not receive a loan modification, and they did qualify for a modification.

In 2015, the Soules called and e-mailed the AGO for a status update. The Soules allege they did not receive a response.

In 2016, the Soules sued Wells Fargo but lost at trial.

In January 2019, the Soules learned of class action litigation against Wells Fargo based on claimed errors in Wells Fargo's NPV calculation software that caused wrongful foreclosures. The Soules hired a consultant who advised the Soules to submit a public records request to the AGO to determine whether their loan was a Pick a Pay loan "based on the mortgage statement and loan documents that were provided to the AGO," and whether "the NPV calculations utilized to deny the Soule's loan modification were accurate." CP 211-12. The Soules assert their expert opined they did have a Pick a Pay loan, the calculations used by Wells Fargo "were deeply flawed," and they did qualify for a modification. CP at 212.

The Soules made a series of public records requests of the AGO between July 2019 and January 2020. The Soules claimed that they "did not suspect any misconduct, wrongdoing or negligence on part of the [AGO]" prior to filing the requests. CP at 212. They requested records regarding how the AGO conducted the investigation of their complaints. They also asked for the documents "used or presented by Wells Fargo or the

5

[AGO] that caused the [AGO] to reach [its] investigative conclusions," among other documents. CP at 212. The Soules contend that no record produced by the AGO demonstrated the AGO made any effort to verify the accuracy of calculations provided by Wells Fargo.

The Soules claimed the AGO produced small batches of records in response to their series of public records requests. In one batch of records received in 2020, the Soules discovered a letter an AGO employee "allegedly wrote" in 2015. CP at 213. The 2015 letter was sent via e-mail and United States mail, but the Soules claimed they did not receive it. They reached out to the AGO employee who authored the letter in 2020. The employee responded on February 25, 2020, and provided a "sample Pick a Pay mortgage note that she had used to conclude that the Soules did not have a Pick a Pay loan." CP at 213.

In their complaint, the Soules alleged the AGO knew the AGO employee working with them on their investigation was negligent and other employees covered up that negligence. Further, the Soules alleged another AGO employee commented that the Soules' mortgage statement "sure looks like a Pick a Pay loan" and further investigation was discussed but never pursued. CP at 214.

The Soules culminated their recitation of alleged facts in their complaint by claiming the AGO "failed to hold Wells Fargo accountable to the terms of the AOD and failed to utilize any accountants, mortgage experts or control processes to verify what Wells Fargo

6

did, said or reported throughout the Pick a Pay Settlement" and "failed to hold Wells Fargo accountable for what they were doing to the Soules." CP at 214. The Soules asserted that "[a]fter careful review and analysis of the public record they had received between October 2019 and March 2021," they filed a tort claim notice on March 24, 2021, that was later denied by the AGO. CP at 215. They claimed that with the AGO failing to timely respond to their complaints and failing to "conduct[] a reasonable and careful investigation, the foreclosure of the Soules' home would have been prevented and the Soules would have been included in the relief intended for Pick a Pay mortgage holders." CP at 215.

On March 5, 2024, the Soules filed a lawsuit against the AGO alleging breach of common law negligence, outrage, and negligent infliction of emotional distress.

*The AGO's CR 12(b)(6) motion to dismiss*

On March 27, 2024, the AGO filed a motion to dismiss pursuant to CR 12(b)(6) in lieu of an answer. The AGO identified the Soules' lawsuit was barred by the statute of limitations. The AGO argued the claimed negligent acts occurred between 2010 and 2015. The AGO anticipated the Soules would claim the discovery rule excused their failure to meet the statute of limitations. The AGO argued the Soules did not diligently pursue their claim, and "[t]here [was] no reason to believe that whatever facts [the Soules] claimed to have learned with their public records request beginning in 2019, could not have also been learned through even minimal diligence five years earlier when they allege they were

7

getting no responses." CP at 199-200. Alternatively, even if some relief under the discovery

rule was granted, the Soules' claim remained barred by the statute of limitations. The letter

sent by the AGO on February 25, 2020, which stated the basis for the AGO's investigative

conclusions including that the Soules did not have a Pick a Pay loan, was sent in response to

the Soules alleging they did not receive the 2015 final investigation letter. Even if February

25, 2020 was accepted as the last date the AGO investigated the Soules' complaints, and in

allowing for the 90-day tolling period permitted by filing the tort claim notice, the last date

the Soules could have filed their lawsuit within the statute of limitations was May 26, 2023.

The Soules opposed the AGO's motion to dismiss and provided a declaration from

Sheldon Soule requesting that judicial notice be taken of information within the attachments

to the declaration "in order to corroborate what is pled in the [Soules'] Complaint."[2] CP at

10. In his declaration, Sheldon Soule declared it took two years for the AGO to provide all

the records without redactions. The Soules assert they did not know of the elements of a

claim for negligent investigation against the AGO until the tort claim notice was filed on

March 24, 2021.  The Soules argued they had no reason to know of the negligent

investigation because the "[d]efendants redacted the records, produced the records in a

---

[2] Both documents were filed on May 24, 2024, after the trial court heard the motion to dismiss. Both documents, however, were signed and dated on April 15, 2024. Although not filed until May 24, 2024, the AGO's reply brief, dated April 19, 2024, discussed the Soules' response and declaration.

confusing way, misnumbered Public Records Requests, asked the Plaintiffs to stop or combine their records requests and have slow-walked the production of those records for nearly five years." CP at 12. Therefore, in light of the discovery rule and equitable tolling, the Soules claimed the statute of limitations did not begin to run until March 24, 2021.

The AGO argued in reply that the Soules had the burden to show the applicability of the discovery rule or equitable tolling and this burden was not met.

On April 30, 2024, the trial court granted the AGO's motion to dismiss.[3] The order identified that "[t]he Court has considered the parties' briefing and the relevant portions of the record" and granted dismissal without prejudice. CP at 180.

The Soules now appeal.

ANALYSIS

*Standard of review*

We review de novo a trial court's order granting or denying dismissal under CR 12(b)(6) for failure to state a claim. *Wash. Food Indus. Ass'n v. City of Seattle*, 1 Wn.3d 1, 17, 524 P.3d 181 (2023). Dismissal is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'" *Orwick v. City of Seattle*, 103 Wn.2d 249, 254, 692 P.2d 793 (1984)

---

[3] A report of proceeding from this hearing is not part of the record on review.

(quoting *Corrigal v. Ball & Dodd Funeral Home, Inc.*, 89 Wn.2d 959, 961, 577 P.2d 580

(1978)). In conducting our review, we accept as true all factual allegations in the complaint

and consider any reasonable inferences therefrom in the light most favorable to the plaintiff.

*Wash. Food Indus. Ass'n*, 1 Wn.3d at 17. We may also consider hypothetical facts not

included in the record that are consistent with the complaint to determine whether the claim

is legally sufficient. *Id*. We do not, however, accept legal conclusions or conclusory

statements as true. *Jackson v. Quality Loan Serv. Corp.*, 186 Wn. App. 838, 843, 347 P.3d

478 (2015). If, even under the most favorable reading of the complaint and any consistent

hypothetical facts, the claim remains legally insufficient, dismissal is proper. *Wash. Food

Indus. Ass'n*, 1 Wn.3d at 17 (citing *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 830, 355

P.3d 1100 (2015)). Dismissal under CR 12(b)(6) is to be granted sparingly and with care.

*Tavaglione v. Dehkhoda & Qadri, PC*, 34 Wn. App. 2d 515, 519-20, 568 P.3d 1158 (2025).

*Statute of limitations*

Claims for negligence are governed by a three-year statute of limitations. RCW

4.16.080(2). A limitation period begins to run when the plaintiff's cause of action accrues.

*Malnar v. Carlson*, 128 Wn.2d 521, 529, 910 P.2d 455 (1996). A cause of action accrues,

and the limitation period begins to run, when the plaintiff has a right to apply to a court for

relief, which is typically when the plaintiff suffers injury or damage. *In re Ests. of Hibbard*,

118 Wn.2d 737, 744, 826 P.2d 690 (1992).

Here, the Soules allege that the AGO's negligent handling of their complaints, failure to properly investigate, and refusal to intervene caused or contributed to the loss of their home in the December 2013 foreclosure. The alleged acts and omissions occurred primarily between 2010 and 2015, with the last substantive communication from the AGO occurring on February 25, 2020. The complaint was not filed until March 5, 2024—well over three years after any of these events. The claims are therefore facially time-barred unless saved by the discovery rule or equitable tolling.

### 1. Discovery rule

The discovery rule is a narrow exception that postpones accrual of a cause of action until the plaintiff knew or, in the exercise of reasonable diligence, should have known of the essential facts supporting the claim. *Crisman v. Crisman*, 85 Wn. App. 15, 20, 931 P.2d 163 (1997). "The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action." *Allen v. State*, 118 Wn.2d 753, 758, 826 P.2d 200 (1992). The discovery rule operates to toll the date of accrual. *Id*. To invoke the discovery rule, a plaintiff must show they could not have discovered the facts earlier through reasonable diligence. *G.W. Constr. Corp. v. Pro. Serv. Indus. Inc.,* 70 Wn. App. 360, 367, 853 P.2d 484 (1993). The plaintiff bears the burden to prove this. *Clare v. Saberhagen Holdings, Inc.*, 129 Wn. App. 599, 603, 123 P.3d 465 (2005). The discovery rule is disfavored because it

11

undermines the statute's purpose of preventing stale claims. *1519-1525 Lakeview Blvd.*

*Condo. Ass'n v. Apartment Sale Corp.*, 144 Wn.2d 570, 578, 29 P.3d 1249 (2001).

Under the CR 12(b)(6) standard articulated in *Washington Food Industry*

*Association*, we confine our review to the complaint's allegations, accepting all factual

assertions as true—including any hypothetical scenarios pled—and draw all reasonable

inferences in the Soules' favor. The Soules allege they only discovered the AGO's alleged

negligence—such as failures to verify loan documents or follow up adequately—through

public records requests made between 2019 and 2020, and that the AGO's redactions and

delayed production concealed these facts until March 24, 2021. They explicitly pleaded that

prior to these requests, they "did not suspect any misconduct, wrongdoing or negligence on

the part of the [AGO]," and hypothesize that the AGO's actions (e.g., unlawful redactions

and slow-walking production) prevented earlier discovery. CP at 212.

However, even accepting the complaint's allegations as true, and drawing inferences

in the Soules' favor, the detailed chronology pleaded by the Soules themselves,

demonstrates they knew or should have known the essential facts supporting their

negligence claim no later than 2015 (and certainly by February 25, 2020).

By 2013, the Soules knew the AGO had declined to intervene on their behalf, had

relied on Wells Fargo's representations, and had stated repeatedly that it could not represent

individual borrowers. The Soules knew the foreclosure occurred despite their complaints to

the AGO. They knew no further investigation by the AGO appeared to be happening after 2015. These facts put the Soules on notice of the investigative shortcomings they now label as "negligence."

The Soules' later assertion that they "did not suspect" negligence of the AGO until March 2021, CP at 212, when they filed the tort claim notice is a conclusory legal statement we do not accept. *Jackson*, 186 Wn. App. at 843. The discovery rule does not reward a plaintiff who ignores known facts or fails to inquire diligently. *See Beard v. King County*, 76 Wn. App. 863, 867, 889 P.2d 501 (1995). The Soules waited until 2019—four years after the last response from the AGO—to request public records, and another five years after that to file suit. No set of facts consistent with the complaint can overcome lack of diligence. The trial court correctly held that the discovery rule does not apply.

### 2. *Equitable tolling*

The doctrine of equitable tolling is "an exception to the statute of limitations that should be used sparingly and does not extend broadly to allow claims to be raised except under narrow circumstances." *In re Pers. Restraint of Bonds*, 165 Wn.2d 135, 141, 196 P.3d 672 (2008). Our Washington Supreme Court identified four conditions that must be present for a court to grant equitable tolling of an applicable statute of limitations in the context of civil litigation: (1) when justice requires, (2) when the defendant engaged in bad faith, deception, or false assurances and (3) the plaintiff exercised diligence, and

13

(4) when tolling is consistent with both the purpose of the statute providing the cause of action and the purpose of the statute of limitations. *Fowler v. Guerin*, 200 Wn.2d 110, 119, 515 P.3d 502 (2022) (citing *Millay v. Cam*, 135 Wn.2d 193, 206, 955 P.2d 791 (1998)). We focus on the second and third conditions, which are brought together through a coordinating conjunction, as the absence of these conditions is dispositive.

In their complaint, the Soules allege the AGO engaged in "unlawful redactions," delayed record production over "nearly five years," and gave "false assurances" of ongoing investigation. CP at 12-13. Even taking these allegations as true, they fall short of the affirmative bad faith, deception, or false assurances.

Rather, as confirmed in the complaint, the AGO did respond to the Soules' inquiries, albeit without the outcome or response the Soules desired. The AGO added the Soules' complaint to an ongoing industry-wide investigation. The AGO communicated with Wells Fargo multiple times. The AGO was explicit in its explanation to the Soules that it did not represent individuals. These responses, while perhaps unsatisfactory to the Soules, do not rise to the level of affirmative deception or false assurances that are required for equitable tolling. *See Fowler*, 200 Wn.2d at 119; *see also Millay*, 135 Wn.2d at 206. Moreover, any fact arguably related to bad faith, deception, or false assurance happened on or before 2015.

The Soules' conclusion that there was concealment does not bind us. *Jackson*, 186 Wn. App. at 843. Redactions in public record responses, even if later deemed improper, do

not constitute affirmative concealment for a cause of action. Arguably, the alleged post-2019 redactions are exclusively related to public records laws (Public Records Act, ch. 42.56 RCW), for which there are separate remedies, not tolling of a statute of limitations for an unrelated tort.

Moreover, any conduct arguably amounting to bad faith, deception, or false assurance ended no later than 2015 (or, at the absolute latest, with the February 25, 2020 letter that explicitly restated the basis for the AGO's conclusions). Even if we assume bad faith, false assurance, and deception, the Soules cannot demonstrate that they exercised diligence. They had actual knowledge of the AGO's position and inaction in 2013 through 2015, yet waited until 2019 to seek records, sued Wells Fargo in 2016 without naming the AGO, and filed this action in 2024. This protracted inaction demonstrates a lack of diligence. *See Douchette v. Bethel Sch. Dist. No. 403*, 117 Wn.2d 805, 812, 818 P.2d 1362 (1991). Equitable tolling is not a substitute for diligence. It exists to protect plaintiffs who have been prevented from suing by the defendant's misconduct, not to rescue those who simply delayed. Because the Soules cannot satisfy the predicates of diligence and defendant misconduct, equitable tolling does not apply. The trial court properly rejected it.

### 2. *Request for judicial notice*

The Soules argue the trial court erred by failing to make an express ruling on their request for judicial notice of certain materials attached to the declaration of Sheldon Soule,

including redacted records received through public records requests. They assert that this omission left them uncertain about what the trial court actually considered when it granted the AGO's motion to dismiss under CR 12(b)(6). We disagree.

ER 201(b) permits judicial notice only of facts that are not subject to reasonable dispute because they are generally known or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. The materials offered here were not such facts. They were evidentiary documents offered solely to "corroborate" the allegations made in the complaint. CP at 10.

Under CR 12(b)(6), a court generally may not consider materials outside the pleadings without converting the motion to one for summary judgment under CR 56 and giving the parties notice and opportunity to present additional materials. Here, however, the trial court did not treat the declaration and attachments as substantive evidence requiring conversion to a CR 56 motion. In the CR 12(b)(6) context, a trial court may consider certain materials without conversion to a CR 56 motion, including public records or facts properly subject to judicial notice. *See Pac. 5000, LLC v. Kitsap Bank*, 22 Wn. App. 2d 334, 342, 511 P.3d 139 (2022). The Soules presented the declaration and attachments solely as corroboration of the allegations pleaded in the complaint.

The trial court's dismissal order expressly stated that it reviewed "the parties' briefing and the relevant portions of the record" in connection with the motion.[4] CP at 180. That necessarily included the declaration and attachments reflecting the alleged redactions and the AGO's communications with the Soules. Under a CR 12(b)(6) motion, the court accepts as true all well-pleaded facts in the complaint and all reasonable inferences arising therefrom, together with any hypothetical facts consistent with the complaint that could be proved. *Woodward v. Taylor*, 184 Wn.2d 911, 917, 366 P.3d 432 (2016). The facts alleged in the complaint establish that the causes of action accrued more than three years before filing. The documents attached to Sheldon Soule's declaration do not demonstrate facts sufficient to trigger the discovery rule or equitable tolling so as to render the claims timely.

For these reasons, the trial court did not err in its handling of the judicial notice request. No express ruling on the judicial notice request was required. The dismissal order properly reflects the materials the court considered.

## ATTORNEY FEES AND COSTS

The Soules ask for an award of fees and costs at the trial court level and on appeal. As they are not the prevailing party on appeal, we deny this request. RAP 14.2;

---

[4] At oral argument, counsel for the AGO represented that the trial court reviewed all submitted materials. Wash. Ct. of Appeals oral argument, *Soule v. Ferguson*, No. 40941-4-III (Sept. 4, 2025), at 10 min., 35 sec. through 10 min., 48 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

17

No. 40941-4-III
*Soule v. Ferguson*

RCW 4.84.010.

Affirmed.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Fearing, J.P.T.[†]

_____

[†] George B. Fearing, a retired judge of the Washington State Court of Appeals, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).