# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MELIHA JUSUPOVIĆ, an individual,

Plaintiff,

v.

INTEGON PREFERRED INSURANCE
COMPANY, a foreign corporation
doing business in Washington State as
NATIONAL GENERAL INSURANCE,

Appellant,

NATIONWIDE APPRAISALS, LLC, a
foreign corporation doing business in
Washington State,

Respondent,

RONALD SHUGAR, individually and as
the owner and operator of
LIGHTHOUSE ESTIMATES, an
unlicensed and unauthorized insurance
adjustment business in Washington
State,

Defendants.

No. 87990-1-I

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — Integon Preferred Insurance Company appeals the superior court's grant of partial summary judgment for Nationwide Appraisals LLC, dismissing Integon's breach of contract and indemnification claims against Nationwide. Integon argues the court erred in concluding there was no genuine issue of material fact the parties did not intend to indemnify Integon as a subsidiary

of the parent company that entered into a client services agreement (CSA) with Nationwide.  We affirm.

I

A

In July 2016, Meliha Jusupović was rear-ended by an uninsured driver at a stop light.  At the time of the collision, she had auto insurance with Integon,[1] an underwriting company subsidiary of National General Management Company (NGMC).  After the collision, her vehicle was transported to an auto repair center.

Jusupović brought breach of contract, bad faith, Insurance Fair Conduct Act (IFCA), RCW 48.30.015(1), Consumer Protection Act (CPA), ch. 19.86 RCW, and negligence claims against Integon, NGMC, Nationwide, and Ronald Shugar as owner and operator of Lighthouse Estimates (collectively Lighthouse).  She alleged Integon hired an unlicensed appraiser, Lighthouse, to appraise the value of her damaged vehicle.  This estimate allegedly valued the cost of repairs at less than the value of the vehicle.  According to Jusupović, Integon hired a new appraiser two months later whose estimate was more than the total worth of her car, which allowed the vehicle to be totaled.  She alleged that Integon failed to pay for her loss of the vehicle and for storage fees at the auto center where she stored her damaged vehicle.

---

[1] Jusupović's insurance policy includes National General Insurance in the letter head and Integon as the policy underwriter.  In letters from a claims representative to Jusupović, the claims representative's signature identifies Integon and includes National General Insurance in the letterhead.  A copy of a policy document shows National General Auto, Home and Health insurance with Integon listed beneath.

B

Integon cross claimed against Nationwide for indemnification and breach of contract. Integon had asked Nationwide to perform an appraisal on Jusupović's car, and Nationwide then asked Lighthouse to perform the appraisal.[2] Integon asserted it was entitled to indemnification from Nationwide because NGMC's CSA with Nationwide had an indemnification clause and because Integon is a wholly owned subsidiary of NGMC, which the CSA refers to as the "Client."

In the CSA, Nationwide agreed to provide appraisal services to NGMC for its claims exposures. The CSA states the agreement was made "between Nationwide and [NGMC] ('Client')." It contains an indemnity provision, stating that

> [i]n the event that Client, its officers, directors, or employees, are made parties to any claims, judicial or administrative proceedings arising out of or resulting from allegations of bad faith, unfair claims practices, breach of fiduciary duty or other grossly negligent or negligent acts or omissions of Nationwide, its officers, employees, agents or subcontractors, Nationwide shall indemnify and hold Client harmless from any and all judgments, settlements, expenses and costs, including reasonable counsel fees, costs and expenses which Client may incur or pay in connection therewith.

The CSA also includes an assignment provision, stating, "Neither Party may assign its rights or obligations under this Service Agreement without the prior written consent of the other Party."

---

[2] The record contains a document indicating Lighthouse appraised Jusupović's car for Integon and features Nationwide Insurance in the letterhead.

C

Integon moved for partial summary judgment on its cross claims against Nationwide. Integon argued that Washington law on indemnity contracts requires Nationwide to indemnify Integon as it was the "Client."

Nationwide responded that the CSA as a whole shows neither party intended Integon to be an indemnitee and that any ambiguities regarding the definition of "Client"—which Nationwide argued included only NGMC—should be construed against the drafter, NGMC. Nationwide also moved for partial summary judgment on the indemnity clause. The court denied Integon's motion for partial summary judgment and denied Nationwide's motion for partial summary judgment on indemnification.

Both Nationwide and Integon moved for reconsideration. Nationwide argued the superior court erred in denying summary judgment for Nationwide because interpretation of the term "Client" is a matter of law, not fact, and the extrinsic evidence Integon sought to introduce was inconsistent with the terms of the agreement in the event the agreement was not fully integrated. Integon argued extrinsic evidence produced by Nationwide during discovery since the denial of Integon's motion for summary judgment established a course of conduct supporting Nationwide's intent to work for both NGMC and Integon as clients. Integon attached to its motion for reconsideration two separate claims documents where National General Insurance was identified as the company and Integon was identified as the insurance underwriter. It also attached a "Transaction List by Customer" spreadsheet and a spreadsheet of vehicle damage appraisals that

4

includes National General Insurance in the spreadsheet, both produced by Nationwide.  The court denied Integon's motion for reconsideration, and granted Nationwide's motion for reconsideration, dismissing with prejudice Integon's breach of contract and indemnification claims.

Integon appeals.[3]

II

Integon argues the superior court improperly denied reconsideration and granted summary judgment for Nationwide on the issue of indemnity because extrinsic evidence presents a genuine question of material fact whether the parties mutually intended all of the CSA's provisions to apply to NGMC's subsidiaries.  We disagree.

We review summary judgment de novo.  Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).  "We engage in the same inquiry as the trial court."  Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 216, 522 P.3d 80 (2022).  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  CR 56(c); see also Ranger Ins. Co., 164 Wn.2d at 552.  " 'A 'material fact' is a fact upon which

---

[3] The order denying Integon reconsideration became a final judgment under RAP 2.2(a)(1) because all claims had been resolved.  Jusupović settled all claims with Integon on March 4, 2025.  Jusupović's claims against Nationwide were dismissed.  All parties stipulated Lighthouse would remain a named defendant but no party would seek recovery and any judgment entered against Lighthouse would be vacated.

the outcome of the litigation depends, in whole or in part." Haley, 25 Wn. App. 2d at 216 (quoting Morris v. McNicol, 83 Wn.2d 491, 494, 519 P.2d 7 (1974)).

A reviewing court " 'may not weigh the evidence, assess credibility, consider the likelihood that the evidence will prove true, or otherwise resolve issues of material fact.' " TracFone, Inc. v. City of Renton, 30 Wn. App. 2d 870, 876, 547 P.3d 902 (quoting Haley, 25 Wn. App. 2d at 217), review denied, 3 Wn.2d 1030, 559 P.3d 494 (2024). " 'The moving party bears the burden of showing that there is no genuine issue of material fact.' " Blue Ribbons Farms Prop. Owners' Ass'n v. Mason, 31 Wn. App. 2d 1, 15, 547 P.3d 927 (2024) (quoting Walston v. Boeing Co., 181 Wn.2d 391, 395-96, 334 P.3d 519 (2014), overruled by Cockrum v. C.H. Murphy/Clark-Ullman, Inc., 4 Wn.3d 873, 877, 569 P.3d 287 (2025)). " 'If this burden is satisfied, the nonmoving party must present evidence demonstrating material fact. " Id. (quoting Walston, 181 Wn.3d 395-96). A summary judgment opponent " 'must do more than simply show that there is some metaphysical doubt as to the material facts.' " Gingrich v. Unigard Sec. Ins. Co, 57 Wn. App. 424, 430, 788 P.2d 1096 (1990) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). We view all facts and reasonable inferences in the light most favorable to the nonmoving party. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012). " '[I]f reasonable minds can reach but one conclusion' on an issue of fact, it may be determined on summary judgment." M. A. Mortenson Co., Inc. v. Timberline Software Corp., 140 Wn.2d 568, 579, 998 P.2d 305 (2000) (alteration in original) (quoting Allen v. State, 118 Wn.2d 753, 760, 826 P.2d 200 (1992)).

In reviewing motions for reconsideration, we do not reverse a trial court's ruling absent a showing of manifest abuse of discretion. Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005). "A trial court abuses discretion when its decision is based on untenable grounds or reasons." Id.

Washington follows the objective manifestation theory of contracts. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). "Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than the unexpressed subjective intent of the parties." Id. "We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." Id. at 504.

"If relevant for determining mutual intent, extrinsic evidence may include (1) the subject matter and objective of the contract, (2) all the circumstances surrounding the making of the contract, (3) the subsequent acts and conduct of the parties, and (4) the reasonableness of respective interpretations urged by the parties." Id. at 502. Extrinsic evidence is permissible to understanding parties' intent with respect to specific words or terms and may not be used to vary, contradict, or modify the written word. Id. at 503. However, "the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used." Id. at 503-04.

Viewing all inferences in favor of Integon, the nonmoving party, the CSA's plain language and extrinsic evidence do not create a genuine question of material

fact the parties intended the CSA's indemnity provision to apply other than to NGMC.[4]

The plain language of the contract does not indicate the parties intended to indemnify Integon as a "Client." In the indemnity provision, the parties defined "Client" as NGMC, its officers, directors, or employees. The introductory paragraph defines "Client" as NGMC. The stated intent of NGMC entering into the contract was for Nationwide to provide services to NGMC because of *its* exposures, not the exposures of its subsidiaries. Where the parties did not define "Client" as subsidiaries in the indemnity provision or introductory paragraph nor indicate the purpose was to seek appraisals for the exposures of NGMC's subsidiaries, the plain language does not support a reading the parties intended to indemnify NGMC subsidiaries.

Neither does the industry custom nor the course of conduct support a reading that the parties intended the indemnity provisions to apply to Integon. Meghan Jauhar's declaration identifies NGMC as the administrative facilitator for the subsidiary companies that underwrote the risk. Her declaration states NGMC enters into contracts with third-party providers, seeking services for its subsidiary companies. While this declaration supports a theory the parties intended Nationwide to provide services to NGMC subsidiary underwriting insurers, it does

---

[4] Nationwide argues Integon failed to present any evidence in support of its arguments for its summary judgment motion. We accept review of Integon's evidence submitted with its motion for reconsideration because "[i]n the context of a summary judgment, unlike trial, there is no prejudice to any findings if additional facts are considered." Meridian Mins. Co. v. King County, 61 Wn. App. 195, 203, 810 P.2d 31 (1991) (discussing review of additional facts presented on a CR 59(a)(7) motion for reconsideration because of insufficiency of the evidence).

not raise an inference consistent with the plain language of the CSA that Nationwide and NGMC intended NGMC's subsidiaries to be indemnified.

The course of conduct between the two entities similarly does not raise an inference that the parties intended Nationwide to indemnify NGMC's subsidiaries. Beyond the present claim in which it appears that Nationwide provided appraisal services to a risk underwritten by Integon pursuant to its contract with NGMC, Integon points to two more claims for which it was the insurance underwriter where Nationwide conducted an appraisal for NGMC. Comparing claims numbers, the "transaction list by customer" Nationwide provided in discovery indicates NGMC paid for Nationwide's services on both of those claims numbers. These documents create a reasonable inference Nationwide might have been aware it was doing business with NGMC subsidiaries generally, and potentially aware it was doing business with Integon specifically as an NGMC subsidiary. But this by itself does not imply a broader indemnity agreement, and Integon does not identify any documents where Nationwide indemnified an NGMC subsidiary. Nationwide's accepting payment from an NGMC subsidiary does not show consistent with the plain language of the CSA the parties additionally intended indemnity beyond the stated narrower indemnity of NGMC.

Integon argues Nationwide knew Integon was a subsidiary of NGMC and that by doing business with Integon, Nationwide had accepted assignment of NGMC's indemnification rights under the CSA. But the record shows no express assignment of indemnification rights, and the plain language and extrinsic

9

evidence do not support an inference of indemnity beyond the stated indemnity extending to NGMC.

Affirmed.

_Birk, J._

WE CONCUR:

_Feldman, J._                    _Hazelrigg_